MAHLERWEIN, Appellant,

v.

MAHLERWEIN, Appellee.

[Cite as *Mahlerwein v. Mahlerwein,* 160 Ohio App.3d 564, 2005-Ohio-1835.]

Court of Appeals of Ohio,
Fourth District, Hocking County.

No. 04CA15.

Decided April 18, 2005.

566

James M. Linehan, for appellant.

Larry M. Maley, for appellee.

KLINE, Judge.

{¶ 1} Tiffany Mahlerwein ("Mother") appeals the judgment of the Hocking County Court of Common Pleas adopting a magistrate's decision that found that neither she nor Douglas Mahlerwein ("Father") shall pay child support to the other.  Mother contends that the magistrate erred in changing her ruling after Mother requested findings of fact and conclusions of law, by failing to (1) issue proper and sufficient findings of fact and conclusions of law and (2) properly apply the child-support guidelines.  Additionally, Mother contends that the trial court abused its discretion by failing to independently review the magistrate's decision.  Because we find that the magistrate's decision remained interlocutory until it was adopted by the trial court, we overrule Mother's first assignment of error.  Because we find that the magistrate did not make adequate findings of fact to support her determination that Mother should be the child-support obligor, that Father's annual rental income was $6,000, or that a child-support deviation to zero was appropriate, we sustain Mother's second assignment of error.  Because we find that the magistrate failed to comply with the child-support guidelines in calculating Father's rental income, we sustain Mother's fourth assignment of error.  Finally, because we find that Mother failed to satisfy her burden of proving that the trial court failed to independently review the magistrate's decision before adopting it, we overrule Mother's third assignment of error.  Accordingly, we affirm in part and reverse in part the judgment, and remand this cause for further proceedings consistent with this decision.

I

{¶ 2} The parties were married on June 3, 1995, and have two children, namely, Brady, born on March 12, 1996, and Hunter, born on August 2, 1998.  On January 23, 2001, the parties executed a separation agreement and shared-parenting plan.  Pursuant to the terms of the plan, Father had companionship with the minor children every other weekend, every other Wednesday night, and holidays and vacations, pursuant to the standard Hocking County companionship order.  The plan further provided that neither party would pay child support to the other and that it would be inequitable and inappropriate to follow the child-support guidelines because of the amount of time the children would spend with Father and because Father agreed to pay one-half of the daycare and schooling expenses.

{¶ 3} The trial court issued a decree of dissolution, adopting the separation agreement. However, we note that the decree does not specifically approve or adopt the parties' shared-parenting plan.

{¶ 4} In May 2003, Mother filed a motion for reallocation of parental rights and responsibilities, asking the trial court to limit Father's overnight companionship with the children and institute a child-support order. Thereafter, Father filed a motion to reallocate parental rights and responsibilities, wherein he asked the trial court to designate him as the sole residential parent and legal custodian of the children, or, in the alternative, to designate him the primary residential parent under a shared-parenting plan. Additionally, Father moved the court for an order requiring Mother to pay child support.

{¶ 5} The court held the hearing on March 17, 2004. The parties resolved many issues in a memorandum of agreement on the day of the hearing. The magistrate conducted a hearing on the issues the parties were unable to resolve— babysitting, transportation, and child support.

{¶ 6} On April 1, 2004, the magistrate issued a decision requiring each parent to transport the children to school and arrange for childcare during his or her parenting time. Additionally, the magistrate found that pursuant to the child-support guidelines, Father would owe Mother child support of $652.77 per month. However, based upon the amount of time the children would spend with each parent under the parties' new agreement (43 percent with Father and 57 percent with Mother), the magistrate found that guideline child support was inappropriate and not in the best interest of the children. Therefore, the magistrate concluded that a deviation in the amount of child support was appropriate. The magistrate then ordered Father to pay Mother child support of $105.87 per month, plus a $2.12 per month processing charge, for a total child-support obligation of $107.99 per month. Because the magistrate's decision did not explain how the magistrate determined the amount of the deviation, Mother requested findings of fact and conclusions of law.

{¶ 7} Despite the fact that Mother timely filed her request for findings of fact and conclusions of law, the trial court adopted the magistrate's decision. Upon Mother's motion, the trial court vacated its adoption of the magistrate's decision pending the filing of an amended magistrate's decision.

{¶ 8} On May 10, 2004, the magistrate issued a document entitled "Magistrate's Amended Decision, Findings of Fact and Conclusions of Law, and Judgment Entry." In the amended decision, the magistrate states that under the child-support guidelines, Mother would be the obligor instead of Father, as the

previous magistrate's decision stated.[1] However, noting that under the shared-parenting agreement, the children will be with Mother 57 percent of the time and with Father 43 percent of the time, and noting the ability of each parent to provide the children with adequate housing without contribution from the other parent and the lack of evidence regarding expenses other than work-related child care, the magistrate concluded that guideline child support was inappropriate and not in the best interest of the children. Therefore, the magistrate ordered that neither party would pay child support to the other. Based upon the deviation, the magistrate found that because there was no previous order of child support and the new amount of child support "as recalculated is zero," there was not a substantial change of circumstances sufficient to justify a child-support modification.

{¶ 9} Mother timely objected to the amended magistrate's decision. Specifically, Mother objected to (1) the fact that the magistrate did not incorporate findings of fact and conclusions of law into her prior decision but reached an entirely different decision, (2) the lack of evidence supporting the magistrate's decision to now name Mother the child-support obligor and Father the child-support obligee and reduce the child support to zero, (3) the magistrate's determination that Father would have the children 43 percent of the time, (4) the magistrate's failure to give sufficient reasons for the child-support deviation, or the amount of the deviation, (5) the magistrate's determination that there was not a substantial change of circumstances warranting a modification of child support, when the magistrate compared the previous order of no support to the amount of child support after her deviation to zero child support, and (6) the magistrate's improper calculation of the parties' income.

{¶ 10} Despite Mother's pending objections, on May 25, 2004, the trial court adopted the magistrate's amended decision, findings of fact and conclusions of law, and judgment. Again, upon Mother's motion, the trial court vacated the magistrate's amended decision and judgment entry, pending the August 24, 2004 objections hearing.

{¶ 11} Thereafter, Father filed an ex parte motion to modify the previous order vacating the judgment, requesting that the court reinstate the judgment with respect to all matters except child support, to ensure that he received the parenting time he was entitled to receive under the parties' memorandum of agreement. The trial court found Father's motion meritorious and ordered the

---

1. We note that while the first magistrate's decision concluded that Father was the obligor, the child-support-guideline worksheet attached to that decision assumes that Mother is the obligor.

parties to comply with their March 17, 2004 agreement pertaining to parenting time for the minor children.

{¶ 12} On August 27, 2004, the trial court journalized an entry stating: "Upon review, the [Mother's] objections to the magistrate's decision are hereby overruled."

{¶ 13} On September 23, 2004, Mother appealed the trial court's August 27 entry. Upon review of Mother's notice of appeal and the judgment entry appealed from, we found that the entry that Mother appealed might not be a final, appealable order pursuant to R.C. 2505.02 and our holding in *Blankenship v. Blankenship*, Hocking App. No. 02CA18, 2003-Ohio-4551, 2003 WL 22017252, at ¶ 23. Accordingly, we ordered Mother to file a memorandum directed to the jurisdictional issues within ten days of the journalization of our entry. Mother requested an extension of time to file her jurisdictional memorandum. Before we ruled upon Mother's motion, she filed a jurisdictional brief, including a copy of the trial court's November 4, 2004 nunc pro tunc entry adopting the magistrate's decision filed on May 10, 2004. Upon consideration of the trial court's nunc pro tunc entry, we found that Mother's September 23, 2004 notice of appeal was premature and that the appeal in this matter was not perfected until the trial court issued its entry on November 4, 2004.

{¶ 14} On appeal, Mother presents the following assignments of error for our review:

{¶ 15} "I. The Magistrate erred by improperly changing her decision after [Mother] requested findings of fact and conclusions of law;

{¶ 16} "II. The magistrate erred by failing to issue proper and sufficient findings of fact and conclusions of law;

{¶ 17} "III. The judge erred by failing to independently review the magistrate's decision;

{¶ 18} "IV. The magistrate failed to consider and apply the child support guidelines and factors."

## II

{¶ 19} We review child-support matters under an abuse-of-discretion standard. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. When applying the abuse-of-discretion standard of review, we must not substitute our judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d

135, 138, 566 N.E.2d 1181. We must presume that the findings of the trial court are correct because the trial judge is best able to observe the witnesses and use those observations in weighing the credibility of the testimony. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 81, 10 OBR 408, 461 N.E.2d 1273.

{¶ 20} Mother first argues that the magistrate erred by improperly changing her decision after Mother requested findings of fact and conclusions of law. We disagree. Under Civ.R. 53(E)(4)(a), magistrate's decisions on referred matters are not effective until they are adopted by the trial court. Therefore, a magistrate's decision is interlocutory. Interlocutory orders are subject to change and may be reconsidered upon the court's own motion or that of a party. See *Pitts v. Dept. of Transp.* (1981), 67 Ohio St.2d 378, 21 O.O.3d 238, 423 N.E.2d 1105, fn. 1. Furthermore, a magistrate's decision remains interlocutory, even if adopted by the court, unless and until the court enters a final order that determines all the claims for relief in the action or determines that there is no just reason for delay. See Civ.R. 54(B). Therefore, we cannot say that the magistrate abused her discretion in changing her decision before it became a final order of the court. Accordingly, we overrule Mother's first assignment of error.

## III

{¶ 21} In her second assignment of error, Mother argues that the magistrate erred by failing to issue proper findings of fact and conclusions of law explaining how or why the magistrate determined that Mother should be the child-support obligor. Additionally, in her fourth assignment of error, Mother argues that the magistrate failed to consider and apply the child-support guidelines and factors. Specifically, Mother argues that the magistrate (1) improperly calculated Father's income, (2) named the wrong obligor, (3) erred in determining that a substantial change in circumstances had not occurred, and (4) erred by failing to document or explain how she arrived at the amount of the child-support deviation. Because we find these assignments of error interrelated, we address them together.

{¶ 22} We have previously recognized that the purpose of separately stated findings of fact and conclusions of law is to enable the reviewing court to determine the validity of assigned error. *In re Cunningham,* Athens App. No. 03CA26, 2004-Ohio-787, 2004 WL 323339, at ¶ 5, citing *In re Adoption of Gibson* (1986), 23 Ohio St.3d 170, 172, 23 OBR 336, 492 N.E.2d 146; *In re Fountain* (Feb. 24, 2000), Cuyahoga App. No. 76650, 2000 WL 217756, citing *Davis v. Wilkerson* (1986), 29 Ohio App.3d 100, 101, 29 OBR 112, 503 N.E.2d 210. Civ.R. 52 expressly provides that an opinion or memorandum of decision can satisfy its requirements if the decision contains separately stated findings of fact and conclusions of law. A trial court's decision reciting various facts and a legal conclusion satisfies the requirements of Civ.R. 52 when, together with other parts

of the trial court's record, the decision forms an adequate basis upon which to decide the legal issue presented upon appeal. *Stone v. Davis* (1981), 66 Ohio St.2d 74, 85, 20 O.O.3d 64, 419 N.E.2d 1094; *In re Schoeppner* (1976), 46 Ohio St.2d 21, 23, 75 O.O.2d 12, 345 N.E.2d 608. A trial court's failure to comply with the requirements of Civ.R. 52 is reversible error. *In re Adoption of Gibson*, 23 Ohio St.3d at 172, 23 OBR 336, 492 N.E.2d 146.

## A

{¶ 23} Mother argues that the magistrate erred in failing to state findings of fact supporting her determination that Mother should be the child-support obligor. In *French v. Burkhart* (May 22, 2000), Delaware App. No. 99CAF07038, 2000 WL 699656, the Fifth District Court of Appeals found that pursuant to *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, paragraph three of the syllabus, any court order deviating from the applicable worksheet and the basic child-support schedule must be entered by the court in its journal and must include findings of fact to support its determination. Similarly, the *French* court concluded that a trial court must "state specific facts in support of any decision to initially designate a non-residential, i.e., 'obligor' parent for completion of the child support worksheet in shared parenting cases, when using a 'sole custody calculation with deviations' method." *French* at 4.

{¶ 24} Here, the magistrate does not explain her determination that Mother should now be the child-support obligor for purposes of the child-support worksheet, when neither party previously held the designation. The magistrate's decision, together with the record, offers no insight regarding the factors the magistrate considered in determining who would be the child-support obligor.

{¶ 25} In their original shared-parenting agreement, the parties appear to have contemplated that Father would be the child-support obligor, although he was never formally named as the obligor. The agreement contains the following provision regarding child support: "2. Child Support. a. $435.00 shall be directly paid to Mother from Father monthly." Someone has marked out that provision, and written the phrase "no child support" above it. Then, several paragraphs later, the agreement states that the amount of child support represents a deviation from the guidelines, that the guideline amount would be inequitable and inappropriate because of the amount of time that the children will spend with Father and Father's agreement to pay one-half of the daycare and schooling expenses of the children. Below the provision regarding Father's agreement to pay the daycare and schooling expenses, someone has handwritten the notation "(Approx. $435.00/mo.) (This amount might change.)" The parties' handwritten initials appear next to each of the handwritten notations presumably indicating their assent to the alterations.

{¶ 26} While the record reflects that Mother's income, as calculated by the magistrate, is currently somewhat higher than Father's, it also reflects that, even with Father's increased companionship time under the new agreement, Mother continues to have the children a greater percentage of the time. While some of these factors may support the magistrate's decision to designate Mother as the child-support obligor, we simply cannot speculate as to what factors the magistrate relied upon in making her determination.[2] Therefore, Mother's second assignment of error has merit.

## B

■ {¶ 27} Next, Mother argues that the magistrate improperly calculated Father's gross income. Mother argues that Father claimed a total gross income of $51,988 on his 2002 tax return, yet the magistrate found that he had an annual employment income of $30,451.20, and only $6,000 of rental income, for a total of $36,451.20 in 2003. We note that Father testified that $23,808 of his 2002 income was a one-time capital gain resulting from the sale of a modular home he had placed on some land. R.C. 3119.01(C)(7)(e) specifically excludes "[n]onrecurring or unsustainable income or cash flow items" from the definition of gross income for purposes of child-support calculation. R.C. 3119.01(C)(8) then defines nonrecurring or unsustainable income or cash flow items to include "an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." Because Father testified that this income was a one-time capital gain, the magistrate did not abuse her discretion in excluding it from Father's income for purposes of the child-support calculation.

■ {¶ 28} Additionally, Mother argues that the magistrate improperly calculated Father's rental income. Mother correctly notes that R.C. 3119.01(C)(7) defines "gross income" to include "all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses * * * commissions; royalties; tips; [and] rents." "Gross income" also includes "self-generated income; and potential cash flow from any source." Id.

{¶ 29} Relying upon this definition, Mother argues that the magistrate erred in determining that Father's annual rental income was only $6,000. She contends

---

**2.** This is particularly true given the magistrate's decision to change the obligor from Father in the original decision to Mother in the amended decision. We note that the child-support-guideline worksheets attached to both the original and amended decisions reflect that Mother is the obligor. While this lends some credence to the magistrate's statement that there was a clerical error in the original decision naming Father as the obligor, it offers no insight into the factors that the magistrate considered in designating the child-support obligor.

that Father's testimony demonstrated that, when his property is fully occupied, he collects rent of $3,845 per month, or $46,140 annually. Mother claims that the $6,000 figure selected by the magistrate is the amount of profit that Father claimed on his income tax return. She argues this amount does not comply with the statutory requirements because the tax return allows for deductions, such as depreciation, that are not appropriately considered when calculating a party's income for purposes of child support.

{¶ 30} However, Mother fails to consider that R.C. 3119.01(C)(13) provides that "[s]elf-generated income" means gross receipts received by a parent from * * * rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts." R.C. 3119.01(C)(9)(a) and (b) defines "[o]rdinary and necessary expenses incurred in generating gross receipts" as "actual cash items expended by the parent or the parent's business and includes depreciation expenses of business equipment as shown on the books of a business entity," but specifically excludes depreciation "expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business." Therefore, we cannot say that the magistrate abused her discretion in allowing the deduction of Father's ordinary and necessary expenses in generating his rental income.

{¶ 31} However, from the record before us, we cannot determine exactly what expenses the magistrate deducted from Father's gross rental receipts in determining his rental income. Instead of including each party's gross receipts on line 2a and ordinary expenses on line 2b of the child-support-computation worksheet, the magistrate completed her calculations and entered a lump sum, identified as "other income," on line 6 of the worksheet. Furthermore, the magistrate failed to explain her calculations in her findings of fact. Because the record before us does not reveal how the magistrate determined Father's rental income, Mother's fourth assignment of error has merit. See, e.g., *Snyder v. Snyder* (1995), 105 Ohio App.3d 69, 663 N.E.2d 695 (reversing the trial court because, inter alia, it did not adequately support the gross-income figure that it assigned to obligor).

C

{¶ 32} Next, Mother argues that the magistrate erred in determining that no substantial change of circumstances occurred to warrant a modification of the existing child-support order and in failing to provide any explanation for the amount of the child-support deviation.

{¶ 33} R.C. 3119.79(A) provides: "If an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the amount of

support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet through the line establishing the actual annual obligation. If that amount as recalculated is more than ten percent greater than or more than ten percent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount."

{¶ 34} Therefore, a trial court must compare the existing child-support obligation to the amount of support that would be required to be paid under the child-support-guideline worksheet. If the court determines that the resulting child-support obligation is more than ten percent greater than or more than ten percent less than the existing child-support order, the court must find that there is a substantial change of circumstances warranting a modification of the child-support amount. Id. The Ohio Supreme Court has held that "when the amount of child support provided by the noncustodial parent is zero, but the Child Support Guidelines clearly establish that the noncustodial parent owes support, then that ten percent difference is clearly met." *DePalmo v. DePalmo* (1997), 78 Ohio St.3d 535, 540, 679 N.E.2d 266.

{¶ 35} Here, the magistrate specifically found that the existing child-support order required neither party to pay child support and that, pursuant to the guidelines, Mother would pay child support of $652.77 per month. Therefore, pursuant to R.C. 3119.79(A) and *DePalmo,* the magistrate should have concluded that there was a substantial change of circumstances warranting a modification of child support.

{¶ 36} Instead of finding that there had been a substantial change of circumstances, the magistrate proceeded to deviate from the guideline child-support amount, ordering that neither party should pay support to the other. Then the magistrate compared the previous child-support order of no support to the current deviation and found no substantial change of circumstances and concluded that it was unnecessary to modify the child support. This finding is clearly erroneous under R.C. 3119.79(A) and *DePalmo.* However, this constitutes harmless error, given that the magistrate actually proceeded to modify the child-support order and then deviate from the new statutory amount of child support.

## D

{¶ 37} Mother next argues that the magistrate erred in failing to issue sufficient findings of fact to support her deviation from the guideline amount of child support.

{¶ 38} Pursuant to R.C. 3119.03, "the amount of child support that would be payable under a child support order, as calculated pursuant to the basic child support schedule and applicable worksheet through the line establishing the actual annual obligation, is rebuttably presumed to be the correct amount of child support due." However, in the context of a shared-parenting order, R.C. 3119.24 authorizes the court to deviate from the guideline calculation if that amount "would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of extraordinary circumstances of the parents or because any other factors or criteria as set forth in section 3119.23 of the Revised Code."

{¶ 39} The "extraordinary circumstances" enumerated in R.C. 3119.24(B) include (1) the amount of time the children spend with each parent, (2) the ability of each parent to maintain adequate housing for the children, (3) each parent's expenses, including child-care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant, and (4) any other circumstances the court considers relevant.

{¶ 40} R.C. 3119.24(A)(2) further provides that if the court deviates from the child-support guideline, it "shall enter in the journal the amount [of child support calculated pursuant to the basic child-support schedule and the applicable worksheet], its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting its determination." See, also, *Marker*, 65 Ohio St.3d 139, 601 N.E.2d 496, paragraph three of the syllabus. We must find an abuse of discretion if a trial court orders a deviation that is not supported by findings of fact journalized in the record. *DePalmo*, 78 Ohio St.3d at 538, 679 N.E.2d 266.

{¶ 41} The magistrate considered the relevant factors for a child-support deviation, as enumerated in R.C. 3119.24(B), and found that (1) the children would be with Mother 57 percent of the time, (2) each parent is able to maintain adequate housing for the children without contribution from the other, and (3) the parties presented no evidence regarding expenses, except for work-related child care, which was already factored into the child-support calculation. The magistrate also found that the only relevant factor enumerated in R.C. 3119.23 was (D), the extended parenting time with the obligor.

{¶ 42} Thereafter, the magistrate found that guideline child support was inappropriate and not in the best interest of the children given the amount of time they spend with Mother, the obligor under the child-support order. Then, without any explanation as to how she arrived at the amount of the deviation, the magistrate concluded that neither parent should pay child support to the other.

{¶ 43} We have previously noted that "under a shared parenting plan, a trial court does not abuse its discretion by deviating from the guidelines when it calculates child support by equitably giving parents credit for the time they have physical custody of the child." *Copas v. Copas*, Adams App. No. 02CA754, 2003-Ohio-3473, 2003 WL 21500049, at ¶ 9, citing *Zeefe v. Zeefe* (1998), 125 Ohio App.3d 600, 610, 709 N.E.2d 208; *Eickelberger v. Eickelberger* (1994), 93 Ohio App.3d 221, 638 N.E.2d 130; *Cox v. Cox* (Apr. 8, 1997), Franklin App. Nos. 96APF07–889 and 96APF08–990, 1997 WL 170303; *Weddell v. Weddell* (June 29, 1994), Montgomery App. No. 14274, 1994 WL 312933. See, also, *Fernbeck v. Fernbeck*, Mahoning App. No. 00–CA–276, 2001-Ohio-3482, 2001 WL 1647229; *Anthony v. Anthony* (Dec. 3, 1999), Lake App. No. 98–L–222, 1999 WL 1313730. However, we have previously taken issue with decisions in which a court failed to state how it had arrived at the amount of the deviation from the statutory child-support calculation. See, e.g., *Todd v. Augustin* (Aug. 10, 1999), Scioto App. No. 98CA2585, 1999 WL 615382.

{¶ 44} In accordance with R.C. 3119.24, the magistrate's decision indicates that a deviation is appropriate based upon the time that each of the parties spends with the children. However, the magistrate makes no findings of fact to support her apparent conclusion that the amount of the deviation, eliminating the obligation of either party to pay support, correlates with the amount of time each party spends with the children. Without this information, we cannot adequately determine whether the amount of the deviation constitutes an abuse of discretion. Accordingly, we conclude that the magistrate's failure to provide adequate findings of fact constitutes reversible error.

E

{¶ 45} Because we find that the magistrate did not make adequate findings of fact to support her determination that Mother should be the child-support obligor, that Father's annual rental income was $6,000, or that a child-support deviation to zero was appropriate, we sustain Mother's second assignment of error. Additionally, because we find that the magistrate failed to comply with the child-support guidelines in calculating Father's rental income, we sustain Mother's fourth assignment of error.

IV

{¶ 46} In her third assignment of error, Mother argues that the trial court erred in failing to independently review the magistrate's decision before adopting it. We disagree.

{¶ 47} We have previously held that Civ.R. 53(E) requires a trial court to conduct an independent analysis of the issues considered by the magistrate. *State ex rel. Scioto Cty. Child Support Enforcement Agency v. Adams* (Jul. 23, 1999), Scioto App. No. 98CA2617 at 9, 1999 WL 597257, citing *Hartt v. Munobe* (1993), 67 Ohio St.3d 3, 6, 615 N.E.2d 617; *Inman v. Inman* (1995), 101 Ohio App.3d 115, 118, 655 N.E.2d 199. We generally presume regularity in the proceedings below, and, therefore, we generally presume that the trial court conducted its independent analysis in reviewing the magistrate's decision. *Adams* at 9, citing *Inman*, 101 Ohio App.3d at 119, 655 N.E.2d 199. See, also, *Hartt* at 7, 615 N.E.2d 617. Accordingly, "the party asserting error bears the burden of *affirmatively* demonstrating the trial courts failure to perform its Civ.R. 53(E) duty of independent analysis." (Emphasis sic.) *Adams* at 9, citing *Inman*, 101 Ohio App.3d at 119, 655 N.E.2d 199. See, also, *Hartt*, 67 Ohio St.3d at 7, 615 N.E.2d 617.

{¶ 48} Here, Mother argues that the trial court improperly adopted the original magistrate's decision, despite Mother's timely request for findings of fact and conclusions of law, vacated that entry, and then adopted the amended magistrate's decision, despite Mother's timely objections. However, Mother acknowledges that the trial court vacated both entries and then ruled upon her objections. Mother also argues that the trial court failed to conduct a proper hearing or hear evidence on her objections, conducting only a meeting in chambers with counsel for both parties.

{¶ 49} We find nothing improper in the trial court's adopting the original magistrate's decision while Mother's request for findings of fact and conclusions of law remained pending, particularly since the trial court vacated its entry, upon Mother's request, pending the issuance of the amended magistrate's decision.

{¶ 50} Similarly, we find nothing improper in the trial court's adopting the amended magistrate's decision one day after Mother filed her objections. Civ.R. 53(E)(4)(c) specifically permits a trial court to adopt a magistrate's decision and enter judgment without waiting for timely objections by the parties. That rule further provides that "the filing of timely written objections shall operate as an automatic stay of execution of that judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered." Here, given that Mother's objections and the trial court's entry adopting the amended magistrate's decision were filed on consecutive days, it is likely that they simply crossed paths in the clerk's office. Moreover, upon Mother's motion, the trial court vacated its entry adopting the magistrate's amended decision pending the outcome of the objections hearing.

{¶ 51} Mother contends that the objections hearing did not constitute an independent review of the evidence, because it consisted of only a meeting in chambers. However, we note that Civ.R. 53(E)(4)(b) provides: "The court shall rule on any objections. The court *may* adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration." (Emphasis added.) Thus, the trial court was not required to conduct a hearing or to hear further evidence.

{¶ 52} While Mother alludes to the speed with which the trial court overruled her objections after hearing, we note that approximately three months elapsed from the time that Mother filed her objections and the transcript to the time of the hearing. Thus, this short time frame between the objections hearing and the trial court's entry is not as suspect as the short time between the filing of objections and the court's adoption of the referee's report in *Inman,* supra, 101 Ohio App.3d 115, 655 N.E.2d 199. There, the court found that the speed with which the judgment was entered indicated a lack of independent review because the court adopted the referee's report and recommendations a mere 25 hours after the husband responded to the wife's objections, and the report, objections, response to the objections and transcript totaled 224 pages. Further, we note that, here, the trial court did conduct some form of hearing, albeit an informal hearing, in chambers and off the record.

{¶ 53} Because we find that Mother failed to satisfy her burden of proving that the trial court failed to independently review the magistrate's decision before adopting it, we overrule Mother's third assignment of error.

V

{¶ 54} In conclusion, because we find that the magistrate's decision remained interlocutory and, therefore, subject to modification until adopted by the trial court, we overrule Mother's first assignment of error. Because we find that the magistrate did not make adequate findings of fact to support her determination that Mother should be the child-support obligor, that Father's annual rental income was $6,000, or that a child-support deviation to zero was appropriate, we sustain Mothers second assignment of error. Because we find that the magistrate failed to comply with the child-support guidelines in calculating Father's rental income, we sustain Mother's fourth assignment of error. Finally, because we find that Mother failed to satisfy her burden of proving that the trial court failed to independently review the magistrate's decision before adopting it, we overrule Mother's third assignment of error. Accordingly, we affirm in part and

reverse in part the trial court's judgment and remand this cause for further proceedings consistent with this decision.

Judgment affirmed in part
and reversed in part,
and cause remanded.

PETER B. ABELE, P.J., and MCFARLAND, J., concur.