OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, Rodney Davidson, appeals the decision of the Belmont Court of Common Pleas that his motion to modify parental rights and responsibilities was denied. On appeal, Rodney argues that the trial court did not independently review the facts, did not complete the required child support worksheet, did not properly interpret the facts, and failed to consider the evidence which supported a deviation from the calculated amount of support. However, the record shows that the trial court did not commit any of these alleged errors. Accordingly, the trial court's decision is affirmed.
 Facts {¶ 2} Rodney married Plaintiff-Appellee, Audrey Davidson, on May 21, 1988, and their marriage produced three children. Eventually, Audrey filed a complaint for divorce on June 23, 2005, and the trial court granted the parties a divorce on September 6, 2005. Audrey was named residential parent of the children and Rodney was ordered to pay child support in the amount of $1,487.15 per month, based on the trial court's calculation of Rodney's income at $115,000.00 annually.
 {¶ 3} On April 28, 2006, Rodney moved to modify the existing child support order and the order setting forth the parental rights and responsibilities. According to Rodney's motion, he wanted his support obligation changed because his income would be lowered for health reasons. He also wanted more parenting time, arguing that this would be in the children's best interests.
 {¶ 4} The trial court heard the motion on August 3, 2006, where Rodney testified that a significant portion of his income used to calculate his child support obligation was the result of overtime hours. According to Rodney, he had been suffering from depression both during and after the divorce. His doctor recommended that Rodney stop working overtime so he could sleep better and that this would improve Rodney's mental health. Rodney's doctor, Dr. Richard Minter, testified via deposition and confirmed this diagnosis, while acknowledging that Rodney was able to work more hours.
 {¶ 5} The trial court denied Rodney's motions to recalculate the child support and *Page 2 
modify the parties' parenting time. The trial court concluded that Rodney had been suffering from his depression prior to the divorce and that his depression was being successfully treated, despite the hours that Rodney worked. Therefore, the trial court saw no reason to revisit its previous child support calculations.
 Independent Review of the Magistrate {¶ 6} In his first assignment of error, Rodney argues:
 {¶ 7} "The trial court erred by failing to make an independent review of the facts and law upon which magistrate's decision was based."
 {¶ 8} Rodney contends that the trial court has an obligation to independently review the magistrate's decision, that it did not, and, therefore, this case should be remanded so the trial court can actually decide the case. He believes the trial court's failure to independently review the magistrate's decision is evidenced by the fact that the trial court's judgment entry uses the exact same words as the magistrate's decision, with the exception of two opening sentences which state that Rodney objected to the magistrate's decision and the trial court, after reviewing those objections and the magistrate's decision, was overruling those objections.
 {¶ 9} The current version of Civ.R. 53(D)(4)(d), which became effective on July 1 2006, and to which Rodney cites, requires that a trial court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law" when ruling on objections to a magistrate's decision. Prior to this most recent amendment, Civ.R. 53 did not contain any language mandating this "independent review." Accordingly, there was some dispute among the appellate courts over whether such a review was mandatory. SeeLower/ v. Keystone Bd. of Educ. (May 9, 2001), 9th Dist. No. 99CA007407, at 2.
 {¶ 10} Civ.R. 86(CC) provides that the July 1, 2006, amendments to the Civil Rules "govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that their application in a particular action pending when the amendments take effect would not be feasible or would work injustice, in which event the former procedure applies." There is no reason to *Page 3 
believe that applying the amended version of Civ.R. 53 would not be feasible or work an injustice in the present case, since Rodney filed his objections to the magistrate's decision after the effective date of the amendment. Accordingly, the current version of Civ.R. 53, which requires an independent review of the magistrate's decision is the version which governs this appeal.
 {¶ 11} When examining whether a trial court has conducted the required independent review of a magistrate's decision, appellate courts "generally presume regularity in the proceedings below, and, therefore, we generally presume that the trial court conducted its independent analysis in reviewing the magistrate's decision. Mahlerwein v.Mahlerwein, 160 Ohio App.3d 564, 2005-Ohio-1835, at ¶ 47. Thus, a party who asserts that the trial court did not conduct such a review bears the burden of affirmatively demonstrating the trial court's failure to perform its duty. Id.
 {¶ 12} Rodney infers that the trial court did not conduct an independent review of the magistrate's decision because, for the most part, its judgment entry tracks the exact language of the magistrate's decision. He contends that there must be some evidence that the trial court conducted an independent review of the magistrate's decision before we can affirm its conclusion, but his argument ignores the presumption in favor of the regularity of trial court proceedings mentioned above. Rodney has not presented anything to rebut the presumption that the trial court conducted the required independent analysis, even though he has an affirmative duty to demonstrate that the trial court did not conduct the required review. "An affirmative duty requires more than a mere inference, it requires appellant to provide the reviewing court with facts to rebut our general presumption." In reTaylor G., 6th Dist. No. L-05-1197, 2006-Ohio-1992, at ¶ 21.
 {¶ 13} Rodney has failed to demonstrate that the trial court did not conduct the required independent review of the magistrate's decision. Thus, his first assignment of error is meritless.
 Child Support Worksheet {¶ 14} In his second assignment of error, Rodney argues:
 {¶ 15} "The trial court erred in affirming the magistrate's decision, where the *Page 4 
magistrate's decision did not comply with the requirements of O.R.C. Sec. 3119.02, and failed to include the appropriate and necessary guideline child support calculations."
 {¶ 16} Rodney claims that the trial court was required to attach a child support worksheet reflecting its calculations since the proceeding was to determine child support. Since the trial court did not attach such a worksheet in this case, Rodney contends that this case must be remanded to the trial court.
 {¶ 17} R.C. 3119.02 requires that a trial court which is making a child support determination do so in accordance with the basic child support schedule and worksheet. It provides:
 {¶ 18} "In any action in which a court child support order is issued or modified, in any other proceeding in which the court determines the amount of child support that will be ordered to be paid pursuant to a child support order, or when a child support enforcement agency determines the amount of child support that will be paid pursuant to an administrative child support order, the court or agency shall calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code. The court or agency shall specify the support obligation as a monthly amount due and shall order the support obligation to be paid in periodic increments as it determines to be in the best interest of the children. In performing its duties under this section, the court or agency is not required to accept any calculations in a worksheet prepared by any party to the action or proceeding." Id.
 {¶ 19} The Ohio Supreme Court has held that this statute requires that a trial court actually complete a child support worksheet and make it part of the record when calculating the amount of an obligor's child support obligation. Marker v. Grimm (1992), 65 Ohio St.3d 139, paragraph one of the syllabus. There has been some question regarding whether this is a requirement every time a trial court is asked to make a child support determination. For example, some courts have held that a trial court does not need to complete a worksheet and include it in the record when it is refusing to modify an already existing child support order, calling the inclusion of a worksheet in this *Page 5 
circumstance a "vain act." See Nwabara v. Willacy, 8th Dist. No. 8772,2006-Ohio-6414; Gordon v. Liberty, 11th Dist. No. 2004-P-0059,2005-Ohio-2884; Pryor v. Pryor (Dec. 14, 2000), 3d Dist. No. 9-2000-55.
 {¶ 20} Rodney claims that these courts have incorrectly interpreted R.C. 3119.02. According to Rodney, a motion to modify a child support order is a proceeding to determine the amount of child support that will be ordered to be paid, even if the trial court ultimately refuses to modify the existing order. Since R.C. 3119.02 requires that the trial court complete a worksheet in any "proceeding in which the court determines the amount of child support that will be ordered to be paid pursuant to a child support order," a worksheet must be completed in all cases, even those in which the trial court refuses to modify the existing child support order.
 {¶ 21} Rodney's argument is based on a faulty premise. R.C. 3119.02
requires that the trial court use the basic child support schedule, the applicable worksheet, and other statutory sections to calculate a child support obligation. It does not require that the trial court put the worksheet it used into the record. Instead, that requirement arose out of Marker so "appellate courts be assured that the literal requirements of R.C. [3119.02] have been followed, and that an order or modification of support is subject to meaningful appellate review." Id. at 142. If a trial court is not ordering a modification, then there is no longer any need to ensure that the trial court properly calculated the amount to be paid. Thus, there is no longer any need to require that the worksheet be in the record.
 {¶ 22} Rodney also criticizes the trial court not only for failing to include a worksheet in the record, but also for failing to attempt to complete a worksheet at all to see whether there was a substantial change in circumstances. Essentially, Rodney argues that the trial court did not follow the proper procedures when concluding that it would not modify the existing child support order.
 {¶ 23} As the Sixth District has pointed out, "even courts adopting [the view that there is no need to put a completed worksheet in the record when refusing to modify an existing child support order] have acknowledged that a trial court denying a motion to modify on the basis that there is no substantial change in circumstances must either *Page 6 
include a completed worksheet in the record or must make adequate findings of fact and calculations in its decision to permit an appellate court on review to ascertain why completing the worksheet would be a `"vain act"'." Yark v. Yark (Jan. 12, 2001), F-00-010, at 6.
 {¶ 24} In this case, the trial court did not include a completed worksheet in the record when it denied Rodney's motion to modify the existing child support order. Nevertheless, its order clearly states why it believed that completing the worksheet would be a vain act. The trial court determined that it would impute the income used to calculate the current child support order, even if Rodney was not actually making that much money. Moreover, Rodney was still working overtime and, therefore, earning the income the trial court used to calculate the award. Thus, he was asking the trial court to modify his child support obligation based on his anticipated income in the future.
 {¶ 25} The trial court was required to state in the record why it was not modifying the existing child support order and its order satisfies this requirement. Accordingly, the arguments in Rodney's second assignment of error are meritless.
 Weight of Evidence {¶ 26} In his third assignment of error, Rodney argues:
 {¶ 27} "The trial court erred in adopting the unreasonable interpretation of the expert witness' testimony upon which the magistrate's decision was based."
 {¶ 28} Rodney notes that the trial court found that Rodney's doctor "did not state to a reasonable degree of medical certainty that Rodney was not able to work more than 40 hours a week." Rodney argues that this factual finding is not supported by the weight of the evidence, but Rodney is incorrect.
 {¶ 29} When determining whether a factual finding is against the manifest weight of the evidence, an appellate court is "necessarily constrained by the principle that judgments supported by competent, credible evidence going to all elements of the case must not be reversed." Gerijo v. City of Fairfield, 70 Ohio St.3d 223, 26, 1994-Ohio-0432, citing CE. Morris Co. v. Foley Constr. (1978),54 Ohio St.2d 279. We must indulge every reasonable presumption in favor of the trial court's judgment and findings of fact. Gerijo, *Page 7 
citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. If the evidence is susceptible to more than one interpretation, we must construe it consistently with the trial court's judgment.Gerijo, citing Ross v. Ross (1980), 64 Ohio St.2d 203. Thus, Rodney is correct if the trial court's factual finding is not supported by competent, credible evidence.
 {¶ 30} In this case, Dr. Minter testified on both direct and redirect examination that he believed, within a reasonable degree of medical certainty, that working overtime would be detrimental to Rodney's mental health. On cross-examination, Dr. M inter testified that he does not believe that Rodney "cannot" work overtime within a reasonable degree of medical certainty. Thus, Dr. Minter's testimony on this point can be summarized briefly: Rodney can work overtime, but his doctor believes this will harm Rodney's mental health and recommends that he not work overtime.
 {¶ 31} As can be seen, the facts do support the trial court's factual finding that Rodney was able to work more than forty hours per week. Since this assignment of error only addresses whether the trial court erred in finding this fact — and not with how this fact applied to the trial court's analysis — Rodney's third assignment of error is also meritless.
 Deviation {¶ 32} In his final assignment of error, Rodney argues:
 {¶ 33} "The trial court erred in affirming the magistrate's decision, where the magistrate's decision failed to consider the evidence presented in support of Davidson's request for a deviation from guideline child support calculations."
 {¶ 34} Rodney claims the trial court erred when it concluded that there was "no evidence" supporting a deviation from the child support guidelines. Audrey claims that none of the issues Rodney raises amount to a change between the circumstances at the time of the divorce and the hearing on the motion to modify the child support order and, therefore, the trial court properly refused to deviate from the previously ordered amount of child support.
 {¶ 35} The amount of child support to be paid calculated according to the worksheet and guidelines is presumed to be the correct amount of child support. R.C. 3119.03. A trial court may deviate from that amount "if, after considering the factors and *Page 8 
criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, would be unjust or inappropriate and would not be in the best interest of the child." R.C.3119.22. Thus, a trial court has the discretion to deviate from the calculated amount of child support and we should review its decision for an abuse of discretion. Pauly v. Pauly, 80 Ohio St.3d 386, 390, 1997-Ohio-0105; Booth v. Booth (1989), 44 Ohio St.3d 142, 144, The term "abuse of discretion" connotes that the court's decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. Further, we should not independently review the weight of the evidence but should be guided by the presumption that the trial court's findings are correct. Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
 {¶ 36} In order for a trial court to properly order a deviation, it must do all of the following: 1) enter the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet; 2) enter its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child; and 3) make findings of fact supporting that determination.DePalmo v. DePalmo (1997), 78 Ohio St.3d 535, 538, 1997-Ohio-0184. This statute is mandatory and must be followed literally and technically in all material respects. Marker at 141-142.
 {¶ 37} R.C. 3119.23 provides the following factors for a court to consider when deciding whether to order a deviation:
 {¶ 38} "(A) Special and unusual needs of the children;
 {¶ 39} "(B) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;
 {¶ 40} "(C) Other court-ordered payments;
 {¶ 41} "(D) Extended parenting time or extraordinary costs associated with *Page 9 
parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order;
 {¶ 42} "(E) The obligor obtaining additional employment after a child support order is issued in order to support a second family;
 {¶ 43} "(F) The financial resources and the earning ability of the child;
 {¶ 44} "(G) Disparity in income between parties or households;
 {¶ 45} "(H) Benefits that either parent receives from remarriage or sharing living expenses with another person;
 {¶ 46} "(I) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;
 {¶ 47} "(J) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;
 {¶ 48} "(K) The relative financial resources, other assets and resources, and needs of each parent;
 {¶ 49} "(L) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;
 {¶ 50} "(M) The physical and emotional condition and needs of the child;
 {¶ 51} "(N) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;
 {¶ 52} "(O) The responsibility of each parent for the support of others;
 {¶ 53} "(P) Any other relevant factor."
 {¶ 54} In this case, Rodney cites five facts when arguing that the trial court should have deviated from the calculated amount of child support: 1) he pays private school tuition of more than $500 per month in addition to his child support expense, 2) he spends *Page 10 
about $100 per month on clothing, shoes, and other in-kind contributions for the children, 3) he exercises more parenting time with the children than that contemplated by the local rule, 4) he has no significant assets, is $22,000.00 in debt, and his financial obligations exceed his income by about $1,500.00 per month, and 5) Audrey has less than $1,000.00 in debt. However, many of these facts do not, in fact, support a deviation.
 {¶ 55} First, Rodney complains of the tuition expense which he is obligated to pay each month. However, Rodney agreed to pay this expense in addition to the calculated child support amount in the agreed divorce decree. Although R.C. 3119.23(C) allows a trial court to deviate because of other court-ordered payments, it does not appear that the trial court acted unreasonably when it concluded that the tuition expense did not support a deviation from the child support guidelines since Rodney agreed to pay both this expense and his child support obligation.
 {¶ 56} Second, Rodney claims that his in-kind contributions of approximately $100.00 per month justify a deviation from the calculated amount of child support. However, R.C. 3119.23(J) states that a trial court should only consider in-kind contributions for the purposes of deviating from the child support guidelines if those in-kind contributions are significant. Courts have held the following in-kind contributions to be significant: 1) payment of private school tuition amounting to $3,532.50 per month, along with the cost of the children's automobile insurance and maintaining the children's sailing boats,Glass v. Glass (Dec. 22, 2000), 11th Dist. No. 99-L-120; 2) paying for bible camp, school and sport fees, a clothing allowance, some social activities, and setting aside $3,000.00 to purchase a car for a child when the child turned sixteen, Bockhorn v. Bockhorn, 2d Dist. No. 2005-CA-145, 2006-Ohio-6226; and 3) in-kind contributions of over $20,000.00 per year, Fisher v. Fisher, 3d Dist. No. 7-05-03,2005-Ohio-5615.
 {¶ 57} Rodney's in-kind contributions of $100.00 per month are insignificant when compared to the contributions in these cases. Furthermore, Rodney's contribution is not significant when compared to the amount of child support he was ordered to pay, $1,570.46 per month. Thus, Rodney's in-kind contributions do not support a deviation.
 {¶ 58} Third, Rodney claims that he exercises more parenting time than he was *Page 11 
ordered to exercise and, therefore, the trial court should deviate from the calculated amount of child support. Rodney testified that the court order provides him with visitation one evening a week and every other weekend. The parties informally modified that agreement, allowing Rodney visitation from Thursday to Tuesday every other week. Rodney testified that he wanted to further modify the visitation plan, so the parties would be alternating weeks.
 {¶ 59} Under the court-ordered plan, Rodney exercised about three days of visitation every two weeks with two of his children. Under the parties' current agreement, he exercises visitation about five days every two weeks with those two children and he seeks seven days of visitation every two weeks. Rodney has no visitation with his third child, who refuses to see or speak with Rodney.
 {¶ 60} Rodney is clearly exercising more visitation with his children under the parties' informal visitation agreement than he would under the court's order. However, it is not a great increase. If you multiply the number of children involved by the number of days every two weeks, there are forty-two days of parenting that must be provided to the children. Under the court's order, Rodney had parenting time over six of those days. That number increases to ten under the parties' informal agreement. Thus, Rodney exercises four more days of parenting time over his three children every two weeks under the parties' informal agreement than he did under the trial court's order. This is less than a ten percent change.
 {¶ 61} Given the fact that the actual change in the amount of time that Rodney directly parents his children, the trial court did not abuse its discretion when it found that this fact did not support a deviation from the child support guidelines.
 {¶ 62} Finally, Rodney compares his current financial situation to Audrey's current financial situation and argues that his predicament supports a deviation. However, his financial situation is not all that dire if he continued to work overtime and earn the income which has been imputed to him by the trial court. Thus, it is reasonable for the trial court to conclude that this fact also did not support a deviation from the child support guidelines. *Page 12 
 {¶ 63} In conclusion, the trial court did not abuse its discretion when it concluded that there was no evidence supporting a deviation from the child support guidelines and Rodney's argument to the contrary is meritless.
 Conclusion {¶ 64} In conclusion, none of the specific arguments raised in Rodney's assignments of error support a reversal of the trial court's decision. Accordingly, the judgment of the trial court is affirmed.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1