[Cite as *Zwick v. Zwick*, 2018-Ohio-2334.]


COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


JOHN ZWICK

      Plaintiff-Appellee

-vs-

TYRA ZWICK

      Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Patricia A. Delaney, J.
Hon. Craig R. Baldwin, J.

Case No. 2017CA00221

O P I N I O N


CHARACTER OF PROCEEDING:      Appeal from the Stark County Common
Pleas Court, Family Court Division Case
No. 2015DR00986


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      June 11, 2018


APPEARANCES:


For Plaintiff-Appellee      For Defendant-Appellant


CHRISTOPHER DIONISIO      DENISE K. HOUSTON
372 Whipple Ave., N.W.      COLLIN S. WISE
Canton, OH 44718      Tzangas Plakas Mannos Ltd.
      220 Market Ave. S., Eighth Floor
      Canton, OH 44702

*Hoffman, P.J.*

{¶1} Appellant Tyra Zwick appeals the judgment entered by the Stark County Common Pleas Court, Family Court Division, naming Appellee John Zwick residential parent of the parties' two minor children.

STATEMENT OF THE FACTS AND CASE

{¶2} The parties were married in 2006, and had two minor children: a daughter born in 2005, and a son born in 2007. Appellee filed the instant divorce action on October 2, 2015. Appellant filed a proposed shared parenting plan with the court. Appellee sought to be named sole residential parent of the children, and did not file a proposed shared parenting plan with the court.

{¶3} Appellee continues to reside in the marital home in the Canton Local School District, where the children have resided since birth. The children have always attended school in the Canton Local district.

{¶4} After separating from Appellee, Appellant moved to a $385,000 house in Green with her paramour. She believes the schools in Green to be far superior to the Canton Local schools, which she believes have problems with drugs and bullying. She sought to move the children to Green with her in order to attend school in Green. She has worked occasionally as a bartender and has acted as an extra in movies and commercials. She was employed part-time at a business partially owned by her paramour. They have no plans to get married.

{¶5} The case proceeded to a hearing before a magistrate, with the hearing focused primarily on the issue of custody of the children. The magistrate found

Appellant's proposed shared parenting plan to be shared "in name only" because it was so "lopsided that it was blatantly unfair." The magistrate found the shared parenting plan was not in the best interests of the child.

{¶6} The magistrate recommended Appellee be named the residential parent of the children, while giving Appellant nearly equal time with the children. The magistrate found Appellee represented stability and consistency, as appellee was well-grounded with a strong support system.

{¶7} The magistrate noted Appellant was a stay-at-home mom who was actively involved with the children, but also found she preferred a "partying lifestyle" to being with family. The magistrate further found she raised concerns that were both real and contrived, exaggerates, tends to be dramatic, and is not entirely truthful or realistic in her perceptions of the world. The magistrate found she was not realistic about moving the children to Green where she had no support system and her entire world was based on her paramour, nearly twenty years her senior, whom she had no present plans to marry and had not considered what would happen to her and the children in Green if they separated.

{¶8} Appellant filed objections to the magistrate's report. The court adopted the magistrate's findings concerning custody, but added several findings of its own. The court found Appellant showed the guardian ad litem's report to the older child. The court further found the parties talked about each other so poorly in front of the children as to cause the children stress. The court found the parties do not communicate in a manner conducive to shared parenting. The court further noted the daughter was confused by the relationship between Appellant and her paramour, because at the time Appellant was still

married to Appellee. The court further found this confusion was heightened by Appellant sleeping in the same bed with her paramour when the children were visiting. The court also found Appellant's health problems require a "plethora" of doctor's appointments which take up quite a bit of her time. Further, the court concluded Appellant has told the children Appellee is not truthful.

{¶9} It is from the November 1, 2017 judgment naming Appellee the residential parent Appellant prosecutes her appeal, assigning as error:

I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO ADOPT A SHARED PARENTING PLAN AND INSTEAD AWARDED SOLE CUSTODY SOLELY TO FATHER.

II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AWARDED SOLE CUSTODY TO FATHER INSTEAD OF MOTHER.

I.,II.

{¶10} Appellant argues the trial court erred in failing to adopt her shared parenting plan and instead awarded sole custody to Appellee rather than ordering shared parenting or naming her sole residential parent.

{¶11} Appellant argues the court erred in adopting the magistrate's decision which was based solely on the guardian ad litem's recommendation. He argues the magistrate did not make appropriate findings of fact as required by R.C. 3109.04(D)(1)(a)(iii), which provides:

If each parent makes a request in the parent's pleadings or files a motion but only one parent files a plan, or if only one parent makes a request in the parent's pleadings or files a motion and also files a plan, the court in the best interest of the children may order the other parent to file a plan for shared parenting in accordance with division (G) of this section. The court shall review each plan filed to determine if any plan is in the best interest of the children. If the court determines that one of the filed plans is in the best interest of the children, the court may approve the plan. If the court determines that no filed plan is in the best interest of the children, the court may order each parent to submit appropriate changes to the parent's plan or both of the filed plans to meet the court's objections or may select one filed plan and order each parent to submit appropriate changes to the selected plan to meet the court's objections. If changes to the plan or plans are submitted to meet the court's objections, and if any of the filed plans with the changes is in the best interest of the children, the court may approve the plan with the changes. If changes to the plan or plans are not submitted to meet the court's objections, or if the parents submit changes to the plan or plans to meet the court's objections but the court determines that none of the filed plans with the submitted changes is in the best interest of the children, the court may reject the portion of the parents' pleadings or deny the parents' motion or reject the portion of the parents' pleadings or deny their motions requesting shared parenting of the children and proceed

as if the request or requests or the motion or motions had not been made.

If the court approves a plan under this division, either as originally filed or

with submitted changes, or if the court rejects the portion of the pleadings

or denies the motion or motions requesting shared parenting under this

division and proceeds as if the request or requests or the motion or motions

had not been made, the court shall enter in the record of the case findings

of fact and conclusions of law as to the reasons for the approval or the

rejection or denial. Division (D)(1)(b) of this section applies in relation to the

approval or disapproval of a plan under this division.

{¶12} R.C. 3109.04(F) sets forth the factors to consider in determining the best

interests of the children in allocating parental rights and responsibilities generally, and

specifically as regarding shared parenting:

(F)(1) In determining the best interest of a child pursuant to this

section, whether on an original decree allocating parental rights and

responsibilities for the care of children or a modification of a decree

allocating those rights and responsibilities, the court shall consider all

relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b)If the court has interviewed the child in chambers pursuant to

division (B) of this section regarding the child's wishes and concerns as to

the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c)The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d)The child's adjustment to the child's home, school, and community;

(e)The mental and physical health of all persons involved in the situation;

(f)The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g)Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually

oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i)Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)Whether either parent has established a residence, or is planning to establish a residence, outside this state.

(2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a)The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b)The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c)Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d)The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e)The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

(3) When allocating parental rights and responsibilities for the care of children, the court shall not give preference to a parent because of that parent's financial status or condition.

**{¶13}** We note at the outset while Appellant argues the magistrate considered only the recommendation of the guardian ad litem, claims of trial court error must be based on the actions taken by the trial court itself, rather than the magistrate's findings or proposed decision. *State Farm Mut. Auto. Ins. Co. v. Fox,* 182 Ohio App.3d 17, 2009-Ohio-1965, 911 N.E.2d 339, ¶ 11 (2nd District Montgomery). We therefore review the trial court's findings for compliance with R.C. 3109.04, not the magistrate's decision.

**{¶14}** Further, we note in her proposed shared parenting plan, Appellant stated, "The parties hereby waive any requirement that this Court issue findings of fact and conclusions of law with respect to this matter."

**{¶15}** Nevertheless, we find the trial court made adequate findings concerning the shared parenting plan to comply with the statutory requirement the court make findings of fact and conclusions of law to justify rejecting the shared parenting plan as not in the best interests of the children. The court found the plan was shared parenting in name

only, as the proposed plan gave the majority of parenting time to Appellant. Rather, the proposed plan named Appellant residential parent for school, gave Appellee only Schedule A visitation time, gave Appellant all time not allotted to Appellee, and gave Appellant right of first refusal when Appellee was not available for five hours of his parenting time.

{¶16} The court found Appellant was a stay-at-home mom who was actively involved with the children, but also noted she preferred a "partying lifestyle" to being with family. The court found she raised concerns that were both real and contrived, exaggerates, tends to be dramatic, and is not entirely truthful or realistic in her perceptions of the world. The court found she was not realistic about moving the children to Green where she had no support system and her entire world was based on her paramour, nearly twenty years her senior, whom she had no present plans to marry and had not considered what would happen to her and the children in Green if they separated. The court found Appellant showed the guardian ad litem's report to the minor daughter. The court further found the parties talked about each other so poorly in front of the children as to cause the children stress. The court found the parties do not communicate in a manner conducive to shared parenting. The court further noted the daughter was confused by the relationship between Appellant and her paramour, who she referred to as her "boyfriend" to the daughter, because at the time Appellant was still married to Appellee. The court found this confusion was heightened by Appellant sleeping in the same bed with her paramour when the children were visiting. The court also found Appellant's health problems require a "plethora" of doctor's appointments which take up quite a bit of her time. In addition, the court concluded Appellant has told the children Appellee is not

truthful. The trial court made extensive findings to justify its rejection of the shared parenting plan proposed by Appellant.

**{¶17}** Appellant next argues the court erred in adopting the magistrate's decision without conducting an independent review. An appellate court presumes that a trial court performed an independent analysis of a magistrate's decision. *Mahlerwein v. Mahlerwein*, 160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, ¶ 47 (4th Dist. Hocking). Therefore, the party asserting error must affirmatively demonstrate the trial court failed to conduct the independent analysis. *Arnold v. Arnold*, 4th Dist. Athens No. 04CA36, 2005-Ohio-5272, 2005 WL 2416378, at ¶ 31; *Mahlerwein* at ¶ 47.

**{¶18}** Appellant's argument is patently without merit. The trial court added to the findings of the magistrate with additional findings of its own, demonstrating the court undertook an independent review of the record and analysis of the magistrate's decision.

**{¶19}** Finally, Appellant argues the judgment naming Appellee sole residential parent rather than ordering shared parenting or naming her the residential parent is not supported by the evidence. She primarily attacks the testimony and report of the guardian ad litem, who recommended Appellee be named residential parent, with nearly equal parenting time.

**{¶20}** On appeal, our standard of review in assessing the disposition of child custody matters is that of abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 73–74 (1988). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Furthermore, as an appellate court reviewing evidence in custody matters, we do not

function as fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *See Dinger v. Dinger*, 5th Dist. Stark No.2001CA00039, 2001–Ohio–1386. Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159(1997).

{¶21} The record demonstrates the guardian interviewed numerous witnesses and issued several detailed reports to the court. The guardian testified after interviewing teachers at the school, he believed the parties' daughter struggled with her schoolwork not because of bullying as alleged by Appellant, but rather because of the pressure Appellant placed on her to change schools to Green. He testified he believed the "bullying log" the child kept as part of counseling was an attempt by Appellant to shore up her claim of bullying in order to support her plan to move the children to Green to live with her and attend school. Although he did not feel Appellant's behavior rose to the level of parental alienation or a "personal campaign of disdain" against Appellee, he was concerned about her campaign to sour the children on the Canton Local schools in order to convince them Green would be a better school system.

{¶22} There was evidence the children had lived in the marital residence, where Appellee continued to reside, their entire lives, and had always attended the Canton Local schools. Appellee had family and a support system in the area where he resided.

**{¶23}** The babysitter of the children, who was also a friend of Appellant's, testified Appellant made inappropriate comments about the guardian in front of the children, and further called Appellee a liar in front of the children.

**{¶24}** Appellee testified to concerns with manipulation and instability on the part of Appellant. He testified her lifestyle was about vacationing and partying, and he was concerned the children would be an inconvenience. She had no support system in Green other than her paramour, around whom her life in Green was based. When asked where she would go if they broke up, she responded it "would not be an issue."

**{¶25}** There was evidence the older child referred to her school system as "scum," "dangerous," and "low life," and extolled the virtues of the schools in Green despite the fact she had very limited experience living in Green. Appellant's perception there would be no problems in the Green schools was found by the court to be unrealistic. As testified to by the guardian, there are problems in all schools. Her continued campaign to use whatever means necessary to get the children to move in with her and her paramour and attend the Green schools supports the court's conclusion the parties do not communicate in a way conducive to shared parenting.

**{¶26}** Based on the evidence presented to the court, we find no abuse of discretion in the court's order naming Appellee residential parent of the parties' minor children.

{¶27} The first and second assignments of error are overruled. The judgment of the Stark County Common Pleas Court, Family Court Division, is affirmed.

By: Hoffman, P.J.

Delaney, J. and

Baldwin, J. concur