[Cite as *Harsha v. Harsha*, 2024-Ohio-2177.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

LUANN L. HARSHA,

Plaintiff-Appellant,

v.

JAMES B. HARSHA,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 CO 0047**

---

Civil Appeal from the
Court of Common Pleas, Domestic Relations Division, of
Columbiana County, Ohio
Case No. 2017-DR-238

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Louis E. Katz*, for Plaintiff-Appellant and

*Atty. Jane M. Hanlin*, for Defendant-Appellee.

Dated: June 6, 2024

**HANNI, J.**

{¶1} Plaintiff-Appellant, Luann L. Harsha (Mother), appeals from a Columbiana County Common Pleas Court, Domestic Relations Division, judgment denying her motion to terminate the shared parenting plan in effect with her ex-husband, Defendant-Appellee, James B. Harsha (Father), and modifying a child support order. Because the trial court did not abuse its discretion in maintaining the shared parenting plan or in modifying the child support order, we affirm its decision.

{¶2} The parties were married on October 28, 2000. Two children were born as issue of the marriage, a daughter in 2002, who is now emancipated, and a son in 2007. The parties were divorced on November 7, 2018. The trial court adopted and incorporated into the final divorce decree the parties' agreed-to shared parenting plan. Pursuant to the shared parenting plan, the children were to reside with Father no less than every other Thursday at 6:00 p.m. until Sunday at 6:00 p.m. Also, the court named Father the obligor for child support and ordered him to pay child support to Mother.

{¶3} On November 1, 2019, Mother filed a Motion to Terminate Father's Visitation. Subsequently, on November 20, 2019, Father filed a Motion for Contempt and Motion to Modify Child Support. Father alleged Mother was willfully denying him his parenting time. Father then filed a Motion for Reallocation of Parental Rights and Responsibilities seeking to terminate the shared parenting plan and be named the residential parent of the parties' son. Father said that Mother had completely alienated the parties' daughter from him and he did not wish the same to happen with their son.

{¶4} On May 19, 2020, the magistrate found Mother in contempt for willfully violating the parties' divorce decree.

{¶5} On May 21, 2021, the magistrate entered a decision terminating Father's child support obligation for the parties' daughter, effective May 23, 2021, since she was to graduate from high school.

{¶6} After several delays, the pending motions were set to be heard before the magistrate on August 20, 2021. But prior to taking testimony, the parties informed the magistrate they had reached an agreement regarding all matters. Both parties were placed under oath and advised the court that they understood the agreement and

believed it to be in their son's best interest. Pursuant to the terms of the parties' agreement, the magistrate ordered that the shared parenting plan was modified to provide equal parenting time to both parties. The magistrate stated that the parties were to continue with week-on/week-off visitation as they utilized in the summer. The magistrate also ordered the Columbiana County Child Support Enforcement Agency (CSEA) to conduct an investigation to determine the appropriate child support obligation. The magistrate set the effective date of the new child support obligation as November 20, 2019. On September 23, 2021, the trial court entered judgment in accordance with the magistrate's decision.

{¶7} After completion of the CSEA's investigation, on January 5, 2022, the trial court entered a judgment on child support. The court ordered that Mother was to be the obligor and to pay Father a monthly support obligation of $350.96. Mother filed an objection to this decision. Father filed a motion to correct the effective date of the child support order.

{¶8} The matter proceeded to a hearing before the magistrate. In its subsequent decision, the magistrate stated that the parties had reached an agreement with respect to all issues, including (1) that the effective date of the new child support order would be November 20, 2019 (as previously agreed to) and (2) Mother voluntarily withdrew her previous objection to her child support obligation. The decision was adopted by the court on March 31, 2022.

{¶9} Mother then retained new counsel on April 7, 2022. She subsequently filed: (1) a Request for Findings of Fact and Conclusions of Law as to the court's January 5, and March 31, 2022 judgments; (2) a Motion to Terminate Shared Parenting and Other Relief; (3) Objections to the Magistrate's January 5, and March 31, 2022 decisions; and (4) a Motion for a New Trial.

{¶10} The magistrate issued a decision stating that it was unable to make findings of fact and conclusions of law as requested by Mother because all issues had been agreed to by the parties. Mother then filed an affidavit where she averred that she never agreed to the judgments in question but that her counsel entered into them without her consent.

{¶11} In an August 11, 2022 judgment entry, the trial court referred the matter back to the magistrate for a hearing on the matters of child support and the motion to terminate shared parenting.

{¶12} The magistrate then held a hearing on February 27, 2023. The magistrate heard testimony from both parties and interviewed their son in chambers. The magistrate then overruled Mother's motion to terminate the shared parenting plan. He also found that Mother was to pay Father child support in the amount of $358.45 per month.

{¶13} Mother subsequently filed objections to the magistrate's decision. She also filed a motion for the magistrate to withdraw his decision, recuse himself, and allow a different magistrate to hear the case. The trial court overruled the motion.

{¶14} Next, Mother filed a Motion to Release Transcript of Child's Interview. The trial court overruled this motion.

{¶15} The trial court issued its decision overruling Mother's objections and entering judgment in accordance with the magistrate's decision on September 29, 2023.

{¶16} Mother filed a timely notice of appeal on October 12, 2023. She now raises 18 assignments of error. Mother's assignments of error can be grouped into two main categories, those regarding the court's judgment to continue the shared parenting plan and those regarding the order of child support. We will address those assignments of error dealing with shared parenting first and then those assignments of error dealing with child support. Thus, the assignments of error are taken out of order.

I.      <u>TRIAL COURT'S DECISION TO OVERRULE MOTHER'S MOTION TO TERMINATE SHARED PARENTING PLAN AND CONTINUE SHARED PARENTING</u>

{¶17} This court reviews a trial court's judgment regarding the modification of a shared parenting plan for an abuse of discretion. *Dobran v. Dobran*, 7th Dist. No. 02 CA 14, 2003-Ohio-1605, at ¶ 14. Abuse of discretion connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶18} "A court may terminate a prior final shared parenting decree that includes a shared parenting plan * * * upon the request of one or both of the parents or whenever it

determines that shared parenting is not in the best interest of the children." R.C. 3109.04(E)(2)(c).

**{¶19}** The decision whether or not to terminate a shared parenting plan must always be made in the best interest of the child. *Mogg v. McCloskey*, 7th Dist. Mahoning No. 12 MA 24, 2013-Ohio-4358, ¶ 20. Therefore, the trial court is to use the best interest standard to determine if it should terminate a shared parenting plan. *Patrick v. Patrick*, 7th Dist. Carroll No. 17 CA 0913, 2017-Ohio-9380, ¶ 23.

**{¶20}** It is with this law in mind that we turn to Mother's assignments of error dealing with the trial court's decision to continue the shared parenting plan.

**{¶21}** Mother's first assignment of error states:

THE TRIAL COURT (AND THE TRIAL COURT'S MAGISTRATE) ERRED AS A MATTER OF LAW IN FAILING TO RENDER SUFFICIENT FINDINGS OF FACT AND CONCLUSIONS OF LAW AND BY REFERENCING IN ITS FINDINGS AND CONCLUSIONS MATTERS OF WHICH TESTIMONY WAS NOT PERMITTED.

**{¶22}** In this assignment of error, Mother takes issue with the findings of fact, or alleged lack thereof, regarding the statutory best interest factors. Mother argues the magistrate failed to make findings of fact but instead simply made vague conclusions that were not supported by the evidence. She claims the trial court, likewise, did not analyze the statutory factors or make additional findings of fact. She also asserts the trial court improperly relied on matters that took place prior to the date of the final hearing.

**{¶23}** In determining whether shared parenting is in the child's best interest, the court must consider all of the R.C. 3109.04(F)(1) and (2) factors. *Patrick*, 2017-Ohio-9380, ¶ 23.

**{¶24}** The best interest factors set out in R.C. 3109.04(F)(1) are:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the

allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) * * * [Whether a parent or a household member has been convicted of certain criminal offenses, a parent was found to be the perpetrator in an adjudication of an abused or neglected child, or there is reason to believe a parent acted in a manner resulting in a child being an abused or neglected child];

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶25} In addition the above best interest factors, the specific shared parenting factors found in R.C. 3109.04(F)(2) are:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶26} Contrary to Mother's assertion, both the magistrate and the trial court considered the statutory best interest factors. The magistrate separately addressed each factor and either detailed his findings as to that factor or found that it was not applicable. The trial court stated that it was to take into account the child's best interest. And it acknowledged that in order to determine the child's best interest, "a court must consider all relevant factors including the statutory factors set forth in R.C. § 3109.04(F)(1) and (2)." (Sept. 29, 2023 JE, p. 12). And although the trial court did not make its findings factor-by-factor as the magistrate did, it nonetheless made findings going to many of the statutory factors.

{¶27} Thus, Mother's assertion that the magistrate and the trial court did not consider the applicable statutory factors is unfounded.

{¶28} Accordingly, Mother's first assignment of error is without merit and is overruled.

{¶29} Mother's second assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT CONDUCTING A DE NOVO REVIEW OF THE MAGISTRATE'S DECISION.

{¶30} Mother contends here that the trial court erroneously applied an abuse of discretion standard when reviewing the magistrate's decision instead of reviewing it de

novo. She cites to several instances in the court's decision where it refers to the magistrate's discretion.

**{¶31}** Pursuant to Civ.R. 53(D)(4)(d), when ruling on objections to a magistrate's decision, "the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."

**{¶32}** In explaining our review of a trial court's judgment regarding whether it conducted the independent review required by Civ.R. 53(D)(4)(d), this Court has explained:

> When examining whether a trial court has conducted the required independent review of a magistrate's decision, appellate courts "generally presume regularity in the proceedings below, and, therefore, we generally presume that the trial court conducted its independent analysis in reviewing the magistrate's decision." *Mahlerwein v. Mahlerwein*, 160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, ¶ 47 (4th Dist.). Thus, a party who asserts that the trial court did not conduct such a review bears the burden of affirmatively demonstrating the trial court's failure to perform its duty. *Id.*

*Marafiote v. Estate of Marafiote*, 2016-Ohio-4809, 68 N.E.3d 238, ¶ 30 (7th Dist.).

**{¶33}** Father points out that the trial court specifically stated that it independently reviewed this matter. At the beginning of its 21-page judgment entry, the trial court stated:

> I acknowledge my duty to undertake an independent review in order to determine whether or not the Magistrate properly determined the factual issues and appropriately applied the law. According to the Court of Appeals, I am obliged to "critically review and verify" the work of the Magistrate. In fulfilling this obligation, I am to consider the matter anew. Because the trial court is the ultimate finder of fact and its review is de novo, a trial court should not adopt a magistrate's factual findings unless it agrees with them. I therefore have discretion whether to sustain or overrule an objection to a magistrate's decision.

(Sept. 29, 2023 JE, p. 1-2, footnotes omitted). Thus, the trial court was clear here that it was reviewing the magistrate's decision de novo.

**{¶34}** There are some instances where the trial court does state that the magistrate has some discretion including: (1) referring to the magistrate's discretion in discovery matters; (2) referring to giving deference to the magistrate in managing the docket; and (3) referring to the magistrate's discretion in determining if shared parenting is in the child's best interest. (Sept. 29, 2023 JE, p. 6, 9, 12).

**{¶35}** But the court states, in numerous places throughout its judgment that it has independently reviewed this case: (1) "My independent reading of the transcript, however, supports the findings and conclusions of the magistrate"; (2) "After reading and re-reading the transcript as part of my independent review"; (3) "My independent review also supports the conclusion"; (4) "based upon my independent review of the record"; (5) "Based upon my independent review of the totality of the record"; and (6) "After independently reading and re-reading the transcript of the February 27, 2023 hearing I fully agree with the Magistrate." (Sept. 29, 2023 JE, p. 5, 7, 9, 11, 13, 14).

**{¶36}** In conclusion, the trial court stated: "I believe herein and throughout I have fulfilled my mandate to critically review and independently verify the work of the Magistrate. Based upon my independent review, I can only conclude that the Magistrate determined the factual issues properly and applied the law correctly and appropriately." (Sept. 29, 2023 JE, p. 16).

**{¶37}** Furthermore, the trial court's judgment is replete with citations to the transcript, thus demonstrating an independent review. Moreover, this is not a case where the trial court simply copied and pasted the magistrate's decision into its judgment entry. The court addressed Mother's objections and gave independent reasons as to why the magistrate's decision was not in error.

**{¶38}** Accordingly, Mother's second assignment of error is without merit and is overruled.

**{¶39}** Mother's fifth assignment of error states:

THE MAGISTRATE AND TRIAL JUDGE ERRED AS A MATTER OF LAW IN DECIDING THE CASE BASED ON MATTERS OUTSIDE THE RECORD OF THE FEBRUARY 27, 2023 TRIAL.

Case No. 23 CO 0047

**{¶40}** During the trial, the magistrate did not allow testimony as to matters that took place prior to September 23, 2021, the date of the most recent shared parenting judgment. Mother contends that despite this limitation at the trial, both the magistrate and the trial court relied on events predating September 23, 2021, and matters outside of the February 27, 2023 trial.

**{¶41}** The magistrate did limit the testimony at the hearing to matters that had occurred since the date of the last shared parenting judgment. And the magistrate and the court did both cite to matters that occurred prior to that time in discussing the history of the case. But these matters the court referred to were already in the record in this case's long history.

**{¶42}** In discussing a similar argument and finding that the court had the ability to consider matters within the case history when determining the best interest of a child, the Eighth District found: "We recognize that any court has inherent power to review matters properly contained in the file of a pending case." *Willis v. Willis*, 8th Dist. Cuyahoga No. 70937, 1997 WL 272377, *3 (May 22, 1997). The Second District likewise found it permissible to consider the history of the case when making a best interest determination. *See Hoying v. Hoying*, 2d Dist. Darke No. 2021-CA-15, 2022-Ohio-2515, ¶ 79.

**{¶43}** Thus, because the matters considered by the trial court were matters of record in this case, it was proper for the court to consider them in examining the best interest of the child.

**{¶44}** Accordingly, Mother's fifth assignment of error is without merit and is overruled.

**{¶45}** Mother's sixth assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING COUNSEL ACCESS TO THE IN-CAMERA INTERVIEW OF THE PARTIES' CHILD IN PREPARATION OF OBJECTIONS TO THE MAGISTRATE'S DECISION.

**{¶46}** On May 23, 2023, Mother filed a Motion to Release Transcripts of Child's Interview. She sought to review the transcript of the in-camera interview the magistrate conducted with her son. Mother claimed this was due to her son telling her that the

magistrate paid little attention to what he said and would not let him speak freely.  The trial court denied the motion.

**{¶47}**  In this assignment of error, Mother argues the trial court erred in denying her motion.  She relies on *Inscoe v. Inscoe*, 121 Ohio App.3d 396, 700 N.E.2d 70 (4th Dist.1997) for support.  In that case, the court agreed with the appellant that the trial court erred in sealing the in-camera interview from the parties.  *Id*. at 420-421.  The Fourth District reasoned that without access to a transcript of the in-camera interview, a parent could not effectively challenge a trial court's determination of the reasoning ability of the child interviewed.  *Id*. at 420.  The Fourth District acknowledged that its decision was at odds with decisions from the Fifth and Ninth Districts.  *Id*. at 421.

**{¶48}**  This matter is distinguishable from *Inscoe*.  In *Inscoe*, the Fourth District gave two reasons in support for allowing access to the transcript of a child's interview.  It stated that if the legislature had intended to deny parents access to a transcript of their child's in-camera interview, it could have stated so in the statute.  *Id*. at 420.  Significantly, the court also stressed that without access to a transcript of the in-camera interview, a parent could not effectively challenge a trial court's determination of the reasoning ability of the child being interviewed.  *Id*.

**{¶49}**  Pursuant to R.C. 3109.04(B)(1)(b), before a court interviews a child in chambers, it:

> first shall determine the reasoning ability of the child. If the court determines that the child does not have sufficient reasoning ability to express the child's wishes and concern with respect to the allocation of parental rights and responsibilities for the care of the child, it shall not determine the child's wishes and concerns with respect to the allocation.

**{¶50}**  In this case, Mother does not challenge the child's reasoning ability.  Instead, she seeks to learn what the child said during the interview.  Thus, the reasoning set forth in *Inscoe* on this issue is not applicable here.

**{¶51}**  Moreover, numerous other appellate courts have reached the conclusion that R.C. 3109.04(B) precludes parents from accessing the transcript of their child's in camera interview.  *See In re A.M.R.*, 2017-Ohio-9178, 101 N.E.3d 1194 (8th Dist.); *Willis*

*v. Willis*, 149 Ohio App.3d 50, 2002-Ohio-3716, 775 N.E.2d 878 (12th Dist.); *Myers v. Myers*, 170 Ohio App.3d 436, 2007-Ohio-66, 867 N.E.2d 848 (5th Dist.); *In re Longwell*, 9th Dist. Lorain Nos. 94 CA 006006 and 94 CA 006007, 1995 WL 520058 (Aug. 30, 1995).

**{¶52}** Perhaps the Second District has expressed the reasoning in support of keeping an in-camera interview sealed the best:

> A court's inquiry [during the in-camera interview], for example, may include questions such as, "Tell me the things you like, and then tell me the things you don't like about your mom/dad?" If a child believes that every word he or she speaks to the judge may later be read by his or her parents, the child may withhold information and the court's decision-making process may thereby be compromised. To allow parents access to the transcript of their child's in camera interview defeats the statute's purpose to foster candor and also exposes the child to a parent's potentially hostile reaction to the child's words. It is in the best interest of a child, a child who has already been betrayed by the departure of one parent from his or her home, to be able to speak freely without concern of in turn betraying his or her parent.

*Chapman v. Chapman*, 2d Dist. Montgomery No. 21652, 2007-Ohio-2968, ¶ 28.

**{¶53}** Because *Inscoe, supra*, is distinguishable, and in following the logic of the Second District in *Chapman*, the trial court properly denied Mother's request for a copy of the transcript of the child's interview.

**{¶54}** Accordingly, Mother's sixth assignment of error is without merit and is overruled.

**{¶55}** Mother's eighteenth assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT ALLOWING
THE PARTIES' SON TO TESTIFY.

**{¶56}** Mother's counsel wanted to call the child to testify at trial as to how Father treats him. (Tr. 30). Father objected. (Tr. 30). Counsel stated the child would testify to things he personally observed in each of his parents' homes. (Tr. 32). Counsel expected

Case No. 23 CO 0047

the child to testify as to Father's alleged bad temper, verbal abuse, and engaging in activities that are harmful to the child's welfare. (Tr. 32).

**{¶57}** The magistrate did not allow the child to testify. (Tr. 42). The magistrate stated: "I am not going to permit you to bring this child in here and - - and harass and embarrass him in front of both parents. I just think that it's completely improper. * * * My job is to protect the kid, and I'm not going to allow you to do that." (Tr. 42).

**{¶58}** The magistrate told the parties, however, that if they had specific questions for the child, they could give him a list of questions that he would ask when he interviewed the child. (Tr. 42). Neither party submitted questions to the magistrate, however. (Tr. 191-192). The parties acknowledged though that they were satisfied that the magistrate would listen to the child's concerns. (Tr. 191-192).

**{¶59}** Mother now argues it was error to not allow the child to testify. She asserts there is no rule or law prohibiting a child from testifying at his parents' divorce trial. She claims he could have provided important information as to Father's lack of parenting skills and judgment.

**{¶60}** A trial court has broad discretion in determining whether to admit or exclude evidence and its decision will not be reversed absent an abuse of discretion. *Gorman v. Gorman*, 7th Dist. Jefferson No. 12 JE 23, 2013-Ohio-5643, ¶ 36.

**{¶61}** Evid.R. 601(A) provides generally that "[e]very person is competent to be a witness except as otherwise provided in these rules." Under Evid.R. 601(A), the child was competent to be a witness. "A blanket rule disallowing children of any age to testify in domestic relations matters is inconsistent with Evid.R. 601." *Buckmaster v. Buckmaster*, 4th Dist. Highland No. 13A13, 2014-Ohio-793, ¶ 13.

**{¶62}** Courts have held that it is error to not allow a competent child to testify in the parents' divorce trial. For instance, in *Moser v. Moser*, 72 Ohio App.3d 575, 595 N.E.2d 518 (1991), the Third District faced a situation where the trial court refused to allow the parties' 17½ year-old daughter to testify. The trial court had relied on public policy concerns and its concern for the well-being of the child. *Id.* at 579. The appellate court shared the trial court's concerns; however, it concluded that the trial court committed error in refusing to permit the child to testify. *Id.* But ultimately the court did not reverse the decision because:

in order for a reviewing court to reverse an evidentiary ruling of the trial court, an appellant must affirmatively demonstrate through the record on appeal not only that error was committed, in the technical sense, but also that such error was prejudicial to appellant, except in rare circumstances where the error is so substantial that prejudice will be presumed.

*Id.* at 579-580. The court did not find the error to be reversible because there was not a sufficient proffer as to what the child would have testified to so as to allow the appellate court to make a determination as to whether the trial court's error was prejudicial. *Id.* at 580.

**{¶63}** And in *Buckmaster*, 2014-Ohio-793, ¶ 7, the Fourth District refused to apply a policy cited by the trial court "for many years not to permit minor children to testify, citing concerns of parental alienation and emotional abuse." The court stated: "[O]ur concerns cannot and should not take precedence over the rules of evidence. Further, as noted in *Moser*, '[a]s undesirable as the practice may be, courts have traditionally permitted children of the parties to a divorce to testify in the hearing thereon.' *Moser* at 579." *Id.* at ¶ 18.

**{¶64}** Based on case law, the magistrate may have erred in refusing to allow Mother to call the child to testify. Nonetheless, any error here was harmless.

**{¶65}** The magistrate interviewed the child in-chambers. The magistrate gave the parties the chance to submit any questions they wished him to ask the child. Both parties stated they were satisfied with the magistrate conducting the interview. This court has reviewed the transcript of the magistrate's interview with the child. We will not discuss the contents of the interview, however, due to the confidential nature.

**{¶66}** Given the fact that the magistrate gave the parties the opportunity to submit questions and given the nature of the interview, in this particular case the failure to allow the child to testify does not constitute reversible error.

**{¶67}** Accordingly, Mother's eighteenth assignment of error is without merit and is overruled.

**{¶68}** Given the resolution of Mother's first, second, fifth, sixth, and eighteenth assignments of error, the trial court did not abuse its discretion in denying Mother's motion to terminate the shared parenting plan.

Case No. 23 CO 0047

II.      TRIAL COURT'S DECISION REGARDING THE CHILD SUPPORT CALCULATION

{¶69}  We review matters concerning child support for abuse of discretion.  *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997); *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶70}  Pursuant to R.C. 3119.02:

In any action in which a court child support order is issued or modified * * * the court or agency shall calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code.

{¶71}  Moreover, the court may order an amount of child support that deviates from the amount calculated on the child support worksheet through the line establishing the actual annual obligation, if, after considering the factors and criteria set forth in R.C. 3119.23, the court determines that the amount calculated would be unjust or inappropriate and would not be in the best interest of the child.  R.C. 3119.22.  And if the court deviates, "the court must enter in the journal the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, its determination that the amount would be unjust or inappropriate and therefore not in the best interest of the child, and findings of fact supporting that determination."  R.C. 3119.22.

{¶72}  It is with this law mind that we turn to Mother's remaining assignments of error.

{¶73}  We have further divided the remaining assignments of error into two groups for ease of discussion.  Mother's remaining assignments of error, generally, deal with either (1) how the amount of child support was calculated or (2) Father's business expenses and incomes taxes.  We will address the assignments of error out of order, dealing first with the more general child support calculation issues and then with the business expenses/income tax related issues.

{¶74}  Mother's fourth assignment of error states:

THE MAGISTRATE ERRED AS A MATTER OF LAW IN DETERMINING THAT MRS. HARSHA WOULD BE THE CHILD SUPPORT OBLIGOR BEFORE ANY EVIDENCE WAS PRESENTED.

**{¶75}** In the magistrate's decision of January 20, 2023, denying Mother's motion to compel, the magistrate wrote: "The Court also believes that it will be very difficult for the Defendant [Father] to establish the legitimacy of undocumented income tax expense deductions for child support purposes. *On the other hand, in most cases, the Obligee's income in a child support calculation normally does not play a significant role in determining the amount of the Obligor's support obligation*." (Emphasis added).

**{¶76}** Mother argues that by making the italicized statement, the magistrate had already determined, before the trial, that Father would be the obligee and Mother would be obligor. She states the trial court did not address this issue.

**{¶77}** What Mother seems to ignore is that in a judgment entry dated January 5, 2022, the trial court entered judgment in accordance with the CSEA's investigation into child support. In this judgment, the trial court found: "Based on information provided and for **purposes of this order, Plaintiff/Mother, Luann L. Harsha, is the child support obligor and the Defendant/Father, James B. Harsha[,] is the child support obligee.**" (Emphasis sic). The judgment entry further states that the child support order is to continue until further order of the court.

**{¶78}** Thus, as of the January 5, 2022 judgment entry, Mother was designated as the child support obligor. Thus, when the magistrate referred to her as such in his January 20, 2023 decision, he was not making a determination that Mother was the obligor. That determination had already been made by the trial court in reliance on the CSEA's investigation.

**{¶79}** Accordingly, Appellant's fourth assignment of error is without merit and is overruled.

**{¶80}** Mother's seventh assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT PROVIDING SUFFICIENT DETAIL AS TO WHICH STATUTORY FACTORS FORM THE

BASIS OF ITS JUDGMENT NOR CONSIDER WHO WAS THE CHILD'S PRIMARY CARE GIVER.

**{¶81}** Mother contends the trial court failed to provide details as to how it determined which parent was the primary caregiver for child support purposes. She contends the evidence was overwhelming that she is the primary caregiver.

**{¶82}** In this case, the court ordered that the 50/50 shared parenting plan was to continue. Thus, neither party was the child's "primary" caregiver.

**{¶83}** Accordingly, Mother's seventh assignment of error is without merit and is overruled.

**{¶84}** Mother's twelfth and sixteenth assignments of error share a common basis of law and fact. Therefore, we will address them together.

**{¶85}** Mother's twelfth assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT COMPLYING WITH THE MANDATES SET FORTH IN R.C. 3119.22.

**{¶86}** Mother's sixteenth assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT SETTING FORTH HOW THE CHILD SUPPORT DEVIATION AMOUNT WAS DETERMINED.

**{¶87}** The Child Support Worksheet (Exhibit B) attached to both the magistrate's decision and the trial court's judgment entry designates Mother as the obligor and Father as the obligee. It shows the recommended monthly orders on Line 24. It then shows a deviation on Line 25a, reducing the monthly orders from Line 24 by half for each party. Presumably, this was done to account for the fact that the child was to spend 50 percent of his time with each parent. But there is no specific mention of this in the decision or judgment entry.

**{¶88}** R.C. 3119.22 provides for the deviation of child support from the basic child support schedule and worksheet. Pursuant to the statute:

Case No. 23 CO 0047

The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet would be unjust or inappropriate and therefore not be in the best interest of the child.

If it deviates, the court must enter in the journal the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, its determination that the amount would be unjust or inappropriate and therefore not in the best interest of the child, and findings of fact supporting that determination.

R.C. 3119.22.

{¶89} Mother alleges the trial court did not comply with R.C. 3119.22 because it failed to enter the amount of support calculated pursuant to the basic child support schedule, did not make a determination that the amount would be unjust or inappropriate, and did not make any findings of fact to support its child support determination.

{¶90} She further argues the magistrate erred in not explaining how he arrived at the child support deviation. And she points to the trial court's finding that the CSEA conducted an investigation to arrive at a new child support order which included an "agreed-to" Line 25a deviation. Mother contends the parties never agreed to this deviation.

{¶91} The amount of child support to be paid calculated according to the child support worksheet and guidelines is presumed to be the correct amount of support. R.C. 3119.03. For a trial court to properly order a child support deviation, it must: (1) enter the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet; (2) enter its determination that this amount would be unjust or inappropriate and would not be in the best interest of the child; and (3) make findings of fact supporting its determination. *Davidson v. Davidson*, 7th Dist. Belmont No. 07 BE 19, 2007-Ohio-6919, ¶ 36, citing *DePalmo v. DePalmo*, 78 Ohio St.3d 535, 538, 1997-Ohio-

0184, 679 N.E.2d 266. This Court has emphasized: "This statute [R.C. 3119.22, for deviation,] is mandatory and must be followed literally and technically in all material respects." *Id.*, citing *Marker v. Grimm*, 65 Ohio St.3d 139, 141-142, 601 N.E.2d 496 (1992).

**{¶92}** The trial court's judgment satisfies R.C. 3119.22's requirements. The trial court attached the basic child support worksheet to its judgment entry. It noted that the CSEA conducted an investigation to arrive at the new child support order, which specifically included a Line 25a deviation for extended shared parenting. And the judgment is replete with findings of fact in support of a week-on, week-off extended shared parenting schedule.

**{¶93}** Accordingly, Mother's twelfth and sixteenth assignments of error are without merit and are overruled.

**{¶94}** Mother's thirteenth assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW OF NOT DETERMINING AND CALCULATING THE CHILD SUPPORT OBLIGATION AS TO THE PARTIES' DAUGHTER.

**{¶95}** The parties' daughter lived exclusively with Mother while she was a minor. Father's child support obligation for his daughter terminated by court order on May 23, 2021. *See* May 21, 2021 Judgment Entry.

**{¶96}** In its September 29, 2023 judgment entry, the trial court made the current child support order retroactive to November 20, 2019.

**{¶97}** Mother urges that the trial court's judgment fails to account for or calculate the child support owed to her for the period of November 20, 2019 through May 23, 2021, for the parties' daughter.

**{¶98}** The child support worksheet attached to both the magistrate's decision and the trial court's judgment entry states at the top: "No. of Children: 1". Thus, it is clear that neither the magistrate nor the trial court intended this order to relate to the parties' now-emancipated daughter.

Case No. 23 CO 0047

{¶99} As there appear to be no outstanding arrearages owed by Father, he presumably paid his support obligation for the parties' daughter. Any such arrearages would have come to light during the CSEA's investigation.

{¶100} Accordingly, Appellant's thirteenth assignment of error is without merit and is overruled.

{¶101} Mother's fourteenth assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT FOLLOWING PRECEDENT IN CALCULATING CHILD SUPPORT IN EQUAL PARENTING TIME SHARED PARENTING CASES.

{¶102} Mother claims here the trial court erred in failing to follow *Fernback v. Fernback*, 7th Dist. Mahoning No. No. 00-CA-276, 2001-Ohio-3482, which she asserts held that in equal parenting-time shared-parenting cases the method to calculate support is by netting the parties' child support obligations against each other.

{¶103} In *Fernback*, the appellant argued the trial court abused its discretion when it ordered him to pay one hundred percent of his calculated support obligation despite the fact that he was to retain custody of the children half of the time under the shared parenting plan. The appellee, however, argued that Ohio does not provide for an automatic credit in child support obligations under a shared parenting plan. This Court found that we could not determine if the appellant's argument had merit because the record gave contradictory signals as to the trial court's intent to deviate from the child support worksheet. *Id.* Thus, we reversed and remanded the matter for further proceedings. *Id.*

{¶104} As noted above, the CSEA made a deviation on the basic child support worksheet to account for the extended shared parenting time. Thus, Mother was not ordered to pay one hundred percent of her calculated support obligation as was the case in *Fernback*.

{¶105} Accordingly, Mother's fourteenth assignment of error is without merit and is overruled.

{¶106} Mother's seventeenth assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING MRS. HARSHA TO PAY CHILD SUPPORT FOR A PERIOD OF TIME THAT THE PARTIES' CHILD WAS LIVING WITH HER FOR 75% OF THE TIME.

{¶107} The trial court ordered that Mother's child support obligation was retroactive to November 20, 2019.

{¶108} In this assignment of error, Mother contends the court erred in ordering her to pay child support for times when the child was living with her. She points to her testimony regarding the dates the child resided with her and when he resided with Father: (1) from November 20, 2019 to December 31, 2019, the child resided with Mother 42 days and with Father 0 days; (2) from January 1, 2020 to December 31, 2020, the child resided with Mother 292 days and with Father 74 days; and (3) from January 1, 2021 to August 20, 2021, the child resided with Mother 143 days and with Father 89 days. (Tr. 67).

{¶109} In the September 23, 2021 magistrate's decision, the magistrate stated:

> Prior to the taking of testimony or the presentation of evidence, counsel for each party advised the Court that an agreement had been reached regarding all matters. The Agreement was presented in open Court. Both parties were placed under oath and advised the Court that they understood the Agreement, believed it to be in the best interest of the minor child * * * and wished for the Court to adopt the Agreement as its Order.

{¶110} The decision subsequently set forth the shared parenting plan. And it stated the CSEA would conduct an investigation into the appropriate child support obligation and that the effective date of the new child support order would be November 20, 2019.

{¶111} It seems clear from the magistrate's decision that Mother agreed in open court to November 20, 2019 being the effective date of the new child support order. She now claims that she only agreed because she assumed she would be the one receiving child support. It is disingenuous for Mother to try to go back on the agreement she made to in open court, under oath, because she now feels the issue did not end in her favor.

{¶112} Accordingly, Mother's seventeenth assignment of error is without merit and is overruled.

Case No. 23 CO 0047

**{¶113}** Mother's third assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO ALLOW DISCOVERY AS TO DEFENDANT'S CLAIMED BUSINESS EXPENSES.

**{¶114}** Mother sought discovery of Father's business expenses claimed on his taxes.  Father is an independent truck driver.  Father provided many documents in response to the discovery request.  Because the documents were not organized and labeled, Mother filed a motion to compel, which the magistrate denied.

**{¶115}** Mother claims that without an understanding of the documents, her counsel was unable to prepare for trial.  She points out that the magistrate also commented on the confusing nature of the documents.

**{¶116}** A trial court's resolution of a discovery issue is reviewed for abuse of discretion. *Martin v. Gen. Motors Acceptance Corp., N. Am.*, 160 Ohio App.3d 19, 2005-Ohio-1349, 825 N.E.2d 1138, ¶ 60 (7th Dist.) citing *Lightbody v. Rust*, 137 Ohio App.3d 658, 739 N.E.2d 840 (8th Dist.2000).

**{¶117}** The trial court addressed this issue in detail:

Regarding discovery, Ms. Harsha sought 15 categories of information from Mr. Harsha including his income and the expenses he claimed on his various tax returns for the years 2019, 2020, and 2021.  Mr. Harsha duly filed his answers and responses for the first and second discovery requests of Ms. Harsha.  Ms. Harsha filed two separate Motions to compel discovery responses from Mr. Harsha claiming, in blanket fashion and without any specificity, "This response is vague, ambiguous and non-responsive."  The Magistrate overruled those Motions, finding "nothing vague, ambiguous, or non-responsive about the Defendant's responses."  Ms. Harsha objects to the Decision of the Magistrate urging that she did not receive documentation as to each category of expenses claimed by Mr. Harsha on his federal tax returns.

Ms. Harsha has not provided evidence supporting her claim that the discovery responses of Mr. Harsha were in fact vague, ambiguous, or non-responsive. The actual discovery requests that are the subject of Ms. Harsha's second Motion to compel are not part of the record before me. In addition, no analysis is presented of the actual materials that Mr. Harsha provided in his discovery responses. Mr. Harsha responds to this Objection by stating that he provided "full and complete" discovery in this matter, a fact that find[s] support in the record of the most recent evidentiary hearing. The Magistrate described the voluminous materials provided by Mr. Harsha in discovery as a "very thick large brown file" of business receipts in the years 2019, 2020, and 2021.

Moreover, the Magistrate determined this same information, Mr. Harsha's business receipts, was provided to counsel for Ms. Harsha "far in advance of trial." Ms. Harsha has presented no evidence demonstrating that the Magistrate abused his discretion in denying her Motions to compel discovery or that his reasoning is flawed. After reading and re-reading the transcript as part of my independent review, I see no evidence that the discovery process deprived Ms. Harsha of due process or a fair trial.

(Sept. 29, 2022 JE, p. 6-7, foot notes omitted).

{¶118} And in his decision, the magistrate noted that Father "has almost no knowledge" regarding his income tax preparation but Father simply gives all of receipts to his tax preparer. (March 21, 2023 Magistrate's Decision). The magistrate further stated that Father had given Mother a large folder with all of his business receipts for 2019-2021, the same as provided to his tax preparer. He noted that Mother's counsel could have retained a forensic accountant or called the income tax preparer to testify to explain the receipts.

{¶119} Father complied with Mother's discovery request. She requested, and he provided, all of his business receipts for the years 2019-2021. And while they may not have been organized in a way that was easy for Mother and her counsel to understand, Father did provide what was requested of him. Moreover, Father himself does nothing

more than provide these same receipts to his tax preparer, who then determines Father's business expenses and deductions.

**{¶120}** Because Father provided Mother with the requested documents, which are the identical documents he provides to his tax preparer, there was no abuse of discretion in denying Mother's motion to compel.

**{¶121}** Accordingly, Mother's third assignment of error is without merit and is overruled.

**{¶122}** Mother's eighth assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN USING INTERNET WEBSITES IN DECIDING CHILD SUPPORT AS THE WEBSITES WERE OUTSIDE THE RECORD OF THE TRIAL, WERE HEARSAY, AND DENIED COUNSEL THE OPPORTUNITY TO CHALLENGE THE ACCURACY OF THE INFORMATION CONTAINED IN THE WEBSITES.

**{¶123}** Mother claims here that the magistrate improperly considered information from two websites in determining the accuracy of Father's income and expenses. She asserts this evidence was hearsay and outside of the record.

**{¶124}** In his decision, the magistrate made the following findings and included two footnotes to websites, which are what Mother takes issue with here.

**{¶125}** First, the magistrate set out Father's Line 7 annual gross income for 2019 to 2022. The magistrate then included a footnote stating: "According to the U.S. Bureau of Labor Statistics, the median pay for Heavy and Tractor Trailer Truck Driver[s] was $48,310 in 2021. (https://www.bls.gov/ooh/transportation-and-material-moving/heavy-and-tractor-trailer-truck-drivers.htm)". (March 21, 2023 Magistrate's Decision, footnote 4). The magistrate did not offer any comment as to this footnote.

**{¶126}** Second, the magistrate determined that for 2019 to 2021, Father's expenses averaged 53.68 percent of his gross income. The magistrate then included a footnote stating: "According to Freightcourse.com an operator's expenses can amount to more than $150,000 of the expected gross between $220,000 and $240,000 (https:www.freightcourse.com/truck-driver-expenses/)". (March 21, 2023 Magistrate's

Decision, footnote 5). Here, the magistrate commented that Father's expenses and income appeared to be within industry standards.

**{¶127}** The trial court then approved of the magistrate's citations. (Sept. 29, 2023 JE, p. 8).

**{¶128}** The magistrate should not have conducted the independent research referenced in footnotes 4 and 5. But any error here was harmless. There is no indication that either the magistrate or the trial court relied on this information in determining Father's income or the amount of the child support order. They simply used it as a reference point.

**{¶129}** Accordingly, Mother's eighth assignment of error is without merit and is overruled.

**{¶130}** Mother's ninth assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN LIMITING THE CROSS-EXAMINATION OF MR. HARSHA AS TO HIS CLAIMED BUSINESS EXPENSES.

**{¶131}** In this assignment of error, Mother claims the magistrate erred in limiting the cross-examination of Father as to the business expenses listed on his tax returns.

**{¶132}** A trial court has broad discretion to limit the extent of cross-examination with respect to an appropriate subject of inquiry. *Cleveland v. Hyppolite*, 2016-Ohio-7399, 76 N.E.3d 539, ¶ 34 (8th Dist.), citing *State v. Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d 1253 (1993). "A trial court has considerable discretion to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.*, citing *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001).

**{¶133}** During the hearing, Mother's counsel attempted to cross-examine Father as to specific business expenses and receipts on his income tax returns. (Tr. 159-177). Father stated repeatedly that he did not know how certain figures were calculated, only that he provides all of his business receipts to his accountant, who then prepares his taxes. (Tr. 159-177). Eventually, the magistrate told Mother's attorney that he would examine all of the receipts, which Mother's attorney agreed to. (Tr. 177).

Case No. 23 CO 0047

**{¶134}** In his decision, the magistrate stated:

8. The Magistrate also notes that Plaintiff's counsel was given all the same receipts far in advance of trial and choose [sic] not to retain a forensic accountant or even subpoena the income tax preparer to explain how business expenses are calculated for tax purposes. Instead counsel choose [sic] to ask the Defendant to basically explain each receipt, category by category. This was a pointless act because the Defendant had no ability to explain the tax returns, and it literally would have taken days of testimony to go through three years of returns receipt by receipt, which would yield no information. Plaintiff's counsel also had the option of deposing witnesses prior to trial. This was simply not an acceptable tactic.

(March 21, 2023 Magistrate's Decision).

**{¶135}** In reviewing this issue, the trial court determined:

Mr. Harsha testified that he does not prepare his own taxes. He also testified to his knowledge that his tax returns accurately reflect his income and expenses as an over-the-road truck driver. He has not been audited for the years in question. Mr. Harsha testified repeatedly that when it comes to tax preparation he does not know what he was doing because he is not a CPA. This testimony fully supports the conclusion of the Magistrate.

(Sept. 29, 2023 JE, p. 10; foot notes omitted).

**{¶136}** There was no abuse of discretion in limiting Mother's cross examination of Father regarding how his business receipts were used in preparing his income tax returns. Father stated repeatedly that he did not have knowledge of how his taxes were prepared. He testified that he simply saves all of his receipts and provides them to his accountant, who prepares his taxes. Thus, any further questions on this subject would have been repetitive and harassing. Moreover, when the magistrate stopped this line of questioning, the magistrate told Mother's counsel he would examine all of the receipts. Mother's counsel agreed to this.

{¶137} Accordingly, Mother's ninth assignment of error is without merit and is overruled.

{¶138} Mother's tenth, eleventh, and fifteenth assignments of error are closely related. Therefore, we will address them together.

{¶139} Mother's tenth assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN USING MR. HARSHA'S INCOME TAX RETURNS OF WHICH HE HAD NO PERSONAL KNOWLEDGE.

{¶140} Mother asserts the court could not accept Father's tax returns as proof of his income and business expenses because Father did not have personal knowledge of his tax returns. Father testified that he provides all of his receipts and expenses to his accountant, who handles it all.

{¶141} Mother's eleventh assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW BY USING WRITTEN HEARSAY IN DETERMINING MR. HARSHA'S CLAIMED BUSINESS EXPENSES.

{¶142} Here, Mother argues the court erred in admitting Father's tax returns because they constituted hearsay.

{¶143} Mother's fifteenth assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN HOLDING THAT MR. HARSHA MET HIS BURDEN OF PROOF AS TO HIS CLAIMED BUSINESS EXPENSES IN DETERMINING HIS INCOME FOR CHILD SUPPORT PURPOSES.

{¶144} Mother asserts Father did not meet his burden of proof as to his claimed business expenses. She points to the magistrate's findings that Father "has almost no knowledge regarding income tax preparation" and that Father "had no ability to explain his tax returns". Mother asserts, based on these statements, Father clearly did not meet his burden of proof as to his business expenses.

Case No. 23 CO 0047

**{¶145}** Pursuant to R.C.3119.05(A):

When a court computes the amount of child support required to be paid under a court child support order or a child support enforcement agency computes the amount of child support to be paid pursuant to an administrative child support order, all of the following apply:

(A) The parents' current and past income and personal earnings shall be verified by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, *tax returns, and all supporting documentation and schedules for the tax returns.*

(Emphasis added). The child support computation statute instructs the trial court to consider the parents' tax returns and all supporting documentation when calculating child support.

**{¶146}** A court can consider a tax return when computing a person's gross income, though it is not the only indication of a person's income or expenses. *Flege v. Flege*, 12th Dist. Butler No. CA2001-09-225, 2002-Ohio-6105, ¶ 20, citing *Houts v. Houts*, 99 Ohio App.3d 701, 706, 651 N.E.2d 1031 (3d Dist.1995).

**{¶147}** Both the applicable statute and the case law make clear that a trial court is to consider the parents' tax returns when computing child support. And Mother did not present any evidence to dispute the tax returns and supporting receipts.

**{¶148}** Accordingly, Mother's tenth, eleventh, and fifteenth assignments of error are without merit and are overruled.

**{¶149}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, P.J., concurs.

Dickey, J., concurs.

Case No. 23 CO 0047

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Domestic Relations Division, of Columbiana County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**